**Robin C. RIFE, Plaintiff–Respondent,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellant.**

**No. WD 45407.**

Missouri Court of Appeals, Western District.

July 7, 1992.

Keith A. Cary, Deacy & Deacy, Kansas City, for defendant-appellant.

Gene P. Graham, Jr., White, Allinder, Grate & Graham, Independence, for plaintiff-respondent.

Before SPINDEN, P.J., and TURNAGE and BRECKENRIDGE, JJ.

TURNAGE, Judge.

Robin C. Rife filed suit against State Farm Mutual Automobile Insurance Company to recover medical payments under a policy of insurance issued to Rife. The court entered judgment on a jury verdict which awarded medical payments, interest, and attorney fees to Rife in the total sum of $15,628.99. State Farm makes a number of contentions of error, but the dispositive issue is the nondisclosure by a juror of

the fact that he had been sued. Reversed and remanded.

During voir dire of the panel, Gene Graham, attorney for Rife, directed the following question to the panel "Is there any member of the jury panel here who has ever been a defendant or been sued as a named defendant in a lawsuit?" In response to that question one venireperson answered that he had been a defendant in a suit arising out of an automobile accident twenty years before. No other venireperson answered the question.

In its motion for a new trial State Farm alleged that it had been denied a fair trial because a juror had intentionally failed to disclose that he had been a defendant in a lawsuit. In the course of the hearing on State Farm's motion, State Farm called Gerald Coleman, who had served as a juror in the trial, as a witness. Coleman was asked if he understood the question posed by Mr. Graham about whether any member of the jury panel had been a defendant in a lawsuit. Coleman said that he understood the question when it was asked. Coleman admitted that he was the named defendant in two separate lawsuits, both filed by Ford Motor Credit Company. In one suit the summons was served on Coleman on June 17, 1991 and in the other the summons was served on June 3, 1991. The examination of the panel was on July 22, 1991.

Coleman freely admitted he knew at the time the question was directed to the panel that he was the defendant in two lawsuits but stated that he had filed for bankruptcy and had given the summons in the two cases to a lawyer who was supposed to have taken care of both cases. Coleman admitted that judgment in one suit had been entered against him for over $5,000.00 on June 19, 1991. He said his lawyer was supposed to have everything taken care of by then but that his lawyer was slow.

At the conclusion of the hearing the court made the following finding:

As to whether Defendant was prejudiced by juror Coleman's failure to reveal during voir dire that he had been sued twice by Ford Motor Credit, the court finds that there was no intentional conceal-

ment, as Mr. Coleman stated he believed that his bankruptcy action in effect erased those suits.

■ In *Williams by Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 36[3, 4] (Mo. banc 1987), the court held that both intentional and unintentional nondisclosure of information requested of a potential juror on voir dire are recognized. The court held that intentional nondisclosure occurs when there is no reasonable inability to comprehend the information solicited by the question asked and when the prospective juror remembers the experience. In this case juror Coleman admitted that he understood the question when it was asked and remembered the two suits but failed to answer because he thought by taking bankruptcy that his lawyer would take care of the two suits and it was unnecessary for him to mention them.

In *Beggs v. Universal C.I.T. Credit Corporation*, 387 S.W.2d 499, 503[2–8] (Mo. banc 1965), the court held that a prospective juror is not the judge of his own qualifications. In that case a juror failed to respond to a question about whether or not anyone had filed a lawsuit. The juror later explained that he remembered the suit when the question was asked but failed to respond because he did not feel that it had anything to do with that case. The court stated "[h]e had no right to make the decision that his case need not be disclosed because he thought it had nothing to do with the case on trial." *Id.* at 504[9, 10].

■ In this case Coleman had no right to decide on his own whether or not he would answer the question. Nor did he have the right to fail to disclose the fact that he had been sued twice within weeks of the beginning of the trial because he thought his bankruptcy filing or his lawyer would take care of the suits. By his decision not to answer, Coleman undertook to judge his own qualification rather than providing the information sought so that the attorneys could make their strikes in an informed manner. The test in *Williams* of whether or not the nondisclosure was intentional was met when it appeared that Coleman

understood the question and remembered that two suits had been filed against him.

The finding by the court that the nondisclosure by Coleman was unintentional because Coleman stated he believed his bankruptcy action erased the suits is a nonsequitur. The conclusion that the nondisclosure was unintentional does not follow the premise that Coleman believed bankruptcy had erased the suits. The court in effect found the nondisclosure by Coleman was intentional but chose to accept Coleman's explanation and thereby converted an intentional nondisclosure into an unintentional nondisclosure. This impermissibly placed the court's stamp of approval on Coleman's decision not to answer the question. The court abused its discretion in finding that Coleman unintentionally failed to disclose the fact that he had been sued twice.

■ *Williams* held that when intentional concealment is found, bias and prejudice must be presumed to have influenced the verdict. *Id.* at 38[7]. *Williams* further stated that the confidence and deference which our system of justice places in juries demands that litigants be assured of the integrity of the jury selection process. *Id.* at 39. The court further observed that such confidence and deference is justified only when juries are composed of fair and impartial persons who take their responsibilities seriously. *Id.* at 39.

This court is fully aware that the result in this case may be harsh and that the situation is not one of Rifes' making, but until a better solution is found courts have no option but to "to deal harshly with a venireman's disregard for his responsibilities as a potential juror. Only a new trial will preserve inviolate appellant's constitutional entitlement to a fair and impartial jury." *Id.* at 39.

■ State Farm raises one contention which may recur on retrial. The court gave an instruction in the form of MAI 10.08 (1992) using the second optional bracketed phrase and State Farm contends this was error. The notes on use state that such phrase applies to actions under § 375.-296, RSMo 1986. *Willis v. American Na-*

*tional Life Insurance Co.,* 287 S.W.2d 98, 102 (Mo.App.1956), held § 375.296 is applicable only to insurance companies not authorized to do business in this state because that section was passed in 1951 as a part of several sections which dealt with unauthorized insurance companies. There is no dispute that State Farm is authorized to do business in this state. Thus, the instruction in the form of 10.08 should utilize only the first optional bracketed phrase. The third bracketed phrase applies to this case and no question is raised as to that part of the instruction.

State Farm raises a number of other contentions but these need not recur on a new trial. If they do the parties have the benefit of the briefs.

The judgment is reversed and this cause is remanded for a new trial.

All concur.