Terry **BUNKER**, Appellant,

v.

**ASSOCIATION OF MISSOURI ELECTRIC COOPERATIVES,** Respondent,

**Federated Rural Electric Ins. Intervenor.**

No. WD 45380.

Missouri Court of Appeals, Western District.

Aug. 11, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 29, 1992.

Application to Transfer Denied Nov. 24, 1992.

Jerold L. Drake, Grant City, Timothy Boxler, Kansas City, for appellant.

Allan D. Seidel, Trenton, David Phillip Madden, Kansas City, for respondent.

Edward Maschil Manring, Albany, for intervenor.

Before HANNA, P.J., and FENNER and ULRICH, JJ.

HANNA, Presiding Judge.

The appellant, Terry Bunker, was employed by Nodaway Worth Electric Cooperative (hereafter "Nodaway") as a groundman. Nodaway is a member of the Association of Missouri Electric Cooperatives (hereafter "the Association"), the defendant respondent. The Association is a nonprofit organization which provides various services to its members, including safety training. Bunker brought suit against the Association alleging it failed to exercise reasonable care in furnishing educational services to him and his co-employees in safety matters which caused his injuries. The trial court granted defendant's motion for summary judgment on the grounds that there was no genuine issue of material fact. The events which gave rise to this litigation are as follows.

The plaintiff was hired by Nodaway in June 1981, at which time he was 21 years old and had a high school diploma. On March 27, 1983, an ice storm swept through Worth County and downed a

"phase" line which the plaintiff's team was sent to repair. The team consisted of Mr. Fred Poppa, operations manager of Nodaway, Mr. Barry McClelland, and the plaintiff. The damage was done to a single phase system. This type of system consists of two wires, one on top of the other. The top line was a phase wire, which was energized; the bottom line was a neutral wire. The storm had broken the top line, or phase wire. The team cut down the phase wire and let it remain on the ground. It then used the existing neutral wire to replace the downed phase wire. Because the team had been working long hours, this was their last job, and it was a quick method of getting the power back on, they did not dispose of the phase wire or replace the neutral. The repair is described as an "open neutral." Service was restored to the area. This method of repair is not an acceptable procedure, although it is done.

Four days following the initial repair, the plaintiff, along with others, were sent to make final repairs to the downed line. Upon arrival, the plaintiff got out of his truck and began pulling the cut line out of the bushes where the phase line had been dropped when the open neutral repair was done. He apparently came in contact with a wire lopped over the phase wire. The downed line was touching the energized line causing it to be charged with 7200 volts of electricity. Although rubber gloves were in the truck, he did not wear them. Bunker received serious injuries.

Nodaway requires its employees to attend safety seminars provided by the Association. The plaintiff attended at least three of these seminars. The seminars deal with the importance of rubber gloves and protective gear.

Mr. Poppa, as operations manager, was in charge of all training for Nodaway, including safety instruction. Mr. Poppa was aware that the open neutral was not taught by the Association as an approved method of repair. Mr. McClelland had attended the seminars put on by the defendant Association and knew that leaving an open neutral repair was not safe. The Association recommended only one form of line repair, which was not the open neutral used by this team. Both Poppa and McClelland were aware of the risks associated with this short-cut method of repair. Indeed, every lineman deposed in this case knew the Association disapproved of the open neutral method and that the Association did not teach this type of repair.

It is conceded by plaintiff and argued by him that his injury would not have occurred if he had been wearing rubber gloves, if the line had been de-energized, or if the wire had been rolled up immediately after it was cut. All three of these procedures were taught in the safety seminars put on by the defendant Association.

■■■ To address an appeal from summary judgement this court must review the entire record in the light most favorable to the party against whom the court entered the judgement. *Wood & Huston Bank v. Malan*, 815 S.W.2d 454, 457 (Mo.App.1991). The trial court may enter summary judgement when the pleadings, depositions and admissions on file, together with the affidavits, if any, show that no issue of material fact exists and that the law entitles the moving party to a favorable judgment. *Id.;* Rule 74.04(c). To overcome a summary judgement motion, the party against whom judgement is sought must produce facts that demonstrate the existence of a genuine issue of material fact. *Ernst v. Ford Motor Co.*, 813 S.W.2d 910, 916 (Mo. App.1991).

■■ Plaintiff alleges that the Association is responsible in tort for negligently providing educational services. Plaintiff articulates his claim that defendant did not effectively educate or communicate to its students since neither Mr. Poppa nor Mr. McClelland followed the procedures taught by the Association. Basically the argument is that the use of the open neutral by Poppa and McClelland, and the failure of the supervisor on the day of the injury to tell the plaintiff to wear rubber gloves, were the cause of plaintiff's injuries and a direct result of educational malpractice on the part of the defendant. The issue comes down to whether a teacher or the school

can be held legally responsible for the negligent acts of its pupils.

Plaintiff's position must concede that the proper method of repair was taught, and he argues that the Association failed to utilize state-of-the-art methods of teaching, such as goal analysis, performance analysis, and auditory, visual and kinesthetic teaching procedures. The argument continues that since the state-of-the-art methods were not used, the plaintiff and his co-workers were not sufficiently impressed to employ the correct method. In other words, the defendant is not being sued for failing to teach the correct method but for failing to make the students learn.

In order to prove actionable negligence, the plaintiff must first establish the existence of a duty on the part of the defendant to protect the plaintiff from injury. *McKim v. Sears Rodeo Ass'n,* 789 S.W.2d 217, 220 (Mo.App.1990). Secondly, plaintiff must prove defendant's failure to perform that duty. *Id.* Finally, the plaintiff must show injury proximately resulting from this failure to perform the duty owed. *Id.* Negligence only exists if a reasonably prudent person would anticipate the danger and provide against it. *Id.*

The existence of a duty is a matter of law and is thus a question for the court. *Hyde v. Columbia,* 637 S.W.2d 251, 257 (Mo.App.1982). The common denominator that must be present is the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care. *Id.* This court stated in *Hyde:*

> The judicial determination of the existence of a duty rests on sound public policy as derived from a calculus of factors: among them, the social consensus that the interest is worthy of protection; the foreseeability of harm and the degree of certainty that the protected person suffered injury; moral blame society attaches to the conduct; the prevention of future harm; consideration of cost and ability to spread the risk of loss; the economic burden upon the actor and the community and others. *Id.* (citations omitted).

Plaintiff complains the Association failed to make the students learn and was therefore liable for the subsequent wrongdoing of the student even though it taught the proper methods of repair. The record is devoid of any evidence that the teaching by the Association was inadequate, negligent, or that they failed to teach the proper method of repair. Plaintiff has not articulated a standard of care. The instructors in this case taught the correct procedures. Under those circumstances the school or Association cannot be held accountable for the negligent acts of the pupil. The plaintiff's petition failed to establish any duty which the law would impose on the defendant Association for failure to effectively educate its students. The Association cannot be held liable for its student's failure to learn. The possible analogies are endless, but we are unable to imagine a law professor being held responsible for the malpractice of a former law student, or a college being responsible for the miscalculation of its graduate. The failure of the plaintiff to establish a duty owed by the defendant justifies summary judgement as there is no issue of material fact to be litigated.

Order of summary judgment affirmed.

All concur.