**Mary and Ed MATHIS, Respondents–Appellants,**

v.

**JONES STORE COMPANY,**
**Appellant–Respondent,**

**Rite–Way Magic Supply,**
**Inc., Respondent.**

**Nos. WD 52597, WD 52618.**

Missouri Court of Appeals,
Western District.

Sept. 23, 1997.

G. Spencer Miller, Christopher L. Heigele, Ed and Mary Mathis, Kansas City, for appellants.

Eric T. Swanson, Theresa Shean Hall, Knipmeyer, McCann, Smith, Manz & Gotfredson, Kansas City, for Rite–Way Magic Supply, Inc., respondent.

Richard T. Merker, Arlen L. Tanner, Wallace, Saunders, Austin, Brown and Enochs, Kansas City, for The Jones Store Co., respondent.

Before ELLIS, P.J., and LOWENSTEIN and HOWARD, JJ.

ELLIS, Presiding Judge.

The Jones Store Company appeals from a jury verdict in the Circuit Court of Clay County awarding Mary Mathis $50,000 in damages for bodily injuries sustained when she slipped and fell in the Jones Store.

Mathis cross-appeals from the court's order granting the Jones Store a $14,128.90 credit against the judgment, for monies paid prior to trial.

On March 30, 1994, an elderly woman, described by all as a "bag lady," ate lunch at the Hawthorne Restaurant, located in the first floor of the Jones Store Company at 1201 Main in Kansas City, Missouri.[1] Upon finishing her meal, the woman left the restaurant area and walked toward the restrooms. Mary Smith, the waitress who had served the woman, watched her stop at an unattended cleaning cart standing in front of the restrooms, pick up an aerosol can and, in a circular motion, spray her body from the knees up. When the lady finished, she replaced the can and left the store. Shortly thereafter, Mary Mathis walked past the cart on her way to the restroom.[2] As she passed the cart, she slipped and fell, striking her left arm and shoulder on the floor. While lying on the floor Mathis noticed a greasy substance that felt and smelled like wax.

On January 18, 1995, Mathis and her husband filed suit against the Jones Store Company for damages sustained from her fall. The Jones Store filed a third-party petition against Rite–Way Magic Supply, Inc., the company that provided janitorial services to the Jones Store, and owned the cleaning cart left by the restroom, seeking indemnification for any damages awarded to Mathis. A jury trial commenced on February 5, 1996. At the close of evidence, both defendants moved for a directed verdict. The trial court denied the Jones Store's motions, finding that Mathis made a submissible case of negligence against the Jones Store. However, the court sustained Rite–Way's motion finding that, as a matter of law, the service contract did not obligate Rite–Way to defend or indemnify the Jones Store. Mathis' case was submitted to the jury, which subsequently returned a verdict in favor of Mathis in the amount of $50,000. The court entered judgment accordingly.

Thereafter, on March 27, 1996, the court heard evidence on the Jones Store's motion for new trial and motion for credit against the judgment. In its motion for credit, the Jones Store requested a credit against the judgment in the amount of $14,128.90, representing payments made for Mathis' medical expenses. The trial court ordered a credit of $14,128.90 in favor of the Jones Store. Both the Jones Store and Mathis appeal from the judgment.

■ The Jones Store's first point concerns the court's refusal to grant a mistrial based on juror misconduct. The Jones Store moved for a mistrial several days into trial, when a Jones Store employee overheard Juror Thomas Collins and Alternate Juror Thomas Edmonds talking in the hallway. According to the employee, she heard one of the jurors say, "I don't see what the defense can do to counter what we've already heard." The employee also heard the words "the cleaning cart." After being informed of this conversation, the court questioned Juror Collins and Alternate Juror Edmonds, individually, out of the presence of the jury. Alternate Juror Edmonds told the court that he and Juror Collins "did not discuss the facts of the case," but did talk "about some of the points that we'd probably have to make decisions over but nothing about the facts themselves." Alternate Juror Edmonds further told the court that neither he nor Juror Collins expressed an opinion about fault or liability and that no actual testimony had been discussed. Juror Collins essentially denied that he and Alternate Juror Edmonds were actually discussing the case. After questioning the jurors and considering their responses in the light most prejudicial to them, the court concluded that no prejudice had occurred and overruled the motion for mistrial.

The Jones Store contends the trial court erred in failing to grant a mistrial, asserting that prejudice should be presumed because Juror Collins was not entirely forward with the court when he essentially denied discuss-

---

1. The Hawthorne Restaurant is owned and operated by the Jones Store Company.

2. Mathis was not a Jones Store employee. She was at the Jones Store inventorying and re-stocking merchandise for various manufacturers who sold their products at the Jones Store.

ing the case with Alternate Juror Edmonds. It relies on *Rife v. State Farm Mut. Auto. Ins. Co.*, 833 S.W.2d 42, 44 (Mo.App. W.D. 1992) and *Williams by and Through Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 38 (Mo. banc 1987), which stand for the proposition that intentional non-disclosure of information requested of a juror during voir dire creates a presumption of bias and prejudice. We do not disagree that *Rife* and *Williams* stand for the stated proposition. Moreover, our recent holding in *Groves v. Ketcherside*, 939 S.W.2d 393 (Mo.App. W.D.1996) reiterates it. However, the facts here do not involve intentional non-disclosure by a juror during voir dire and therefore, the cited cases are inapposite.

■ In the instant case, the issue is juror misconduct by two jurors talking about the proceedings prior to jury deliberations. The test for juror misconduct is:

> Parties and jurors should avoid all appearance of evil, and if any contact motivated by improper design appears, the jury should ordinarily be discharged or a new trial granted, regardless of the existence of actual prejudice. Accidental and casual contacts with jurors are of rather common occurrence and often unavoidable. If the contact has been wholly innocent, a mistrial should not ordinarily be granted unless it can reasonably be found that there was some improper influence on the jury. Where a juror, by some inquiry or voluntary statement has raised a question as to his impartiality, the question becomes essentially one of fact, and primarily this decision rests with the trial court.

*Sunset Acres Motel, Inc. v. Jacobs*, 336 S.W.2d 473, 479 (Mo.1960) (citation omitted). The trial court hears the evidence concerning the alleged misconduct and is, therefore, in the best position to determine the credibility and intent of the parties and to determine any prejudicial effect of the alleged misconduct. *State v. Simms*, 810 S.W.2d 577, 581 (Mo.App. E.D.1991). For this reason, the granting of a mistrial based on juror misconduct rests within the sound discretion of the

trial court. *Id.* "[I]n the final analysis, every case rests upon its own particular facts and a large discretion is rightly vested in the trial judge who sits as an intimate observer of the whole chain of events." *Sunset Acres Motel, Inc. v. Jacobs*, 336 S.W.2d at 479. The trial court's ruling will not be disturbed absent an abuse of that discretion. *McMullin v. Borgers*, 806 S.W.2d 724, 733 (Mo.App. E.D. 1991). Finally, in *Berry v. Allgood*, 672 S.W.2d 74 (Mo. banc 1984), our Supreme Court rejected the plaintiff's contention that the trial court should have granted a new trial based on juror misconduct in talking casually with two defendants during a lunch break. In a *per curiam* opinion, the court affirmed the judgment "substantially for the reasons set forth by Judge Smith in his opinion for the Court of Appeals, Eastern District, copy of which is appended." *Id.* Judge Smith's opinion states:

> [P]laintiffs suggest this case involves misconduct as a matter of law because of violation by the juror of M.A.I. 2.01. M.A.I. 2.01 … says … that the juror should not remain in the presence of anyone "who is discussing the case when the court is not in session." The result of such a discussion, the instruction says, might cause some outside influence or comment to influence a juror.… We cannot conclude that conversation between a juror and a party is per se misconduct as a matter of law. To do so would be to ignore the clear language of *Sunset Acres Motel, Inc. v. Jacobs, supra*, and *Riley v. St. Louis Public Service Co., supra* [245 S.W.2d 666 (Mo.App.1952)]. *It has been consistently and uniformly held in this state that the granting of a new trial on the grounds of juror misconduct lies within the sound discretion of the trial court.*

*Id.* at 78 (citations omitted; emphasis added).

From the foregoing, it is clear that issues relating to alleged juror misconduct are left to the sound discretion of the trial court, and rulings on such matters will not be disturbed on appeal absent a clear showing of abuse of discretion.[3]

---

**3.** *Rife* and *Williams*, upon which the Jones Store relies, also recognize that unintentional non-disclosure during voir dire does not necessarily show prejudice on the part of the juror. Under

Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

*Anglim v. Missouri Pac. R.R. Co.,* 832 S.W.2d 298, 303 (Mo. banc 1992).

Turning to the instant appeal, we observe first that the incident was promptly reported to the court, and the trial court immediately questioned the jurors involved. Counsel for all parties were present and were given the opportunity to make inquiry of the jurors. The trial judge evaluated the jurors' demeanor and conduct during the interrogation. Juror Collins essentially denied having a conversation about the case. Even assuming, as the trial court did, that he was not completely forward with the court, the trial judge was still "convinced that [Juror Collins] was not in his mind talking about the case. What they were talking about is what issues have to be decided in the case, not the facts of the case." The court further observed that Juror Collins was "primarily on the receiving end of the conversation." As to Alternate Juror Edmonds, the trial judge noted that he was an alternate and would not (and did not) participate in the deliberations and verdict. The court also found that Edmonds was talking about trying to figure out what the issues were, what the jury was going to have to do and what their obligation as a jury was, and not "deciding whether somebody is a liar or not a liar or who was the most reliable expert or what testimony should be used and what should be ignored. Those are the kinds of things you worry about and neither one of them indicated that that was the case." Finally, in denying the Jones Store's motion for new trial, the court stated:

those circumstances, "[p]rejudice is a determination of fact for the trial court, its finding to be disturbed on appeal only for abuse of discretion." *Williams,* 736 S.W.2d at 37.

After watching [the jurors] right here in front of me in the questioning and listening to what few comments they did make to each other, I was convinced that they weren't in their minds talking about the facts of the case. I was also convinced in their minds that they were trying to listen and understand the case and that's all they were talking about. As a result, I could not find that there was any prejudice. I think the courts have to give us some discretion especially four or five days into a jury trial to be able to weigh out the appearances of these individuals and their responses and make an objective decision as to whether or not there is prejudice. I could not find it at that time and after reviewing it in my mind, I still can't find prejudice or any impropriety that would justify a new trial.

From a careful review of the record as to what was said, and giving due deference to the trial court's observations and credibility determinations, we conclude the trial court did not abuse its discretion in refusing to grant a mistrial. To the contrary, the record reveals the trial court gave careful, immediate and deliberate attention to the issue and reached an entirely reasonable conclusion. It ruled accordingly and we will not disturb that ruling. Point denied.

■ In its second point, the Jones Store assigns error to the trial court's failure to sustain its motions for directed verdict and motion for new trial/judgment notwithstanding the verdict.[4] The Jones Store contests the submissibility of Mathis' case, arguing that Mathis failed to establish that the Jones Store knew of, or by exercise of reasonable care could have discovered the slippery condition of the floor next to the cart.

■ In evaluating whether Mathis made a submissible case, we view the evidence and all reasonable inferences in the light most favorable to her case and disregard all evidence to the contrary. *Blake v. Irwin,* 913 S.W.2d 923, 928 (Mo.App. W.D.

4. A motion for judgment notwithstanding the verdict and a motion for directed verdict present the same issue—whether the plaintiff made a submissible case. *King v. Unidynamics Corp.,* 943 S.W.2d 262, 267 (Mo.App. E.D.1997).

1996). Each and every fact essential to liability must be supported with substantial evidence. *Garrett v. Overland Garage & Parts, Inc.*, 882 S.W.2d 188, 191 (Mo.App. E.D. 1994). Substantial evidence is competent evidence from which a trier of fact can reasonably decide the case. *Id.* "Liability cannot rest upon guesswork, conjecture, or speculation beyond inferences that can reasonably decide the case." *Id.* We will not supply missing evidence or give the plaintiff the benefit of unreasonable, speculative, or forced inferences. *Kimbrough v. J.R.J. Real Estate Investments Inc.*, 932 S.W.2d 888, 889 (Mo.App. E.D.1996). "If one or more of the elements of a cause of action are not supported by substantial evidence, a motion for directed verdict and for judgment N.O.V. should be granted." *Garrett v. Overland Garage & Parts, Inc.*, 882 S.W.2d at 191.

■ The principles of law in a slip and fall case are well established in Missouri. *Prier v. Smitty's Supermarkets, Inc.*, 715 S.W.2d 579, 580 (Mo.App. S.D.1986). In such cases, liability to a business invitee is premised upon the owner's superior knowledge of a defective or dangerous condition on his premises which results in injury. *Hunt v. National Super Mkts., Inc.*, 809 S.W.2d 157, 159 (Mo.App. E.D.1991). Thus, to find the Jones Store liable, Mathis was required to prove it had actual or constructive knowledge of the slippery substance on the floor. *Id.* If the Jones Store had knowledge of the condition, it had a duty to warn invitees like Mathis of the slippery condition of the floor next to the cleaning cart. *Morrison v. St. Luke's Health Corp.*, 929 S.W.2d 898, 903 (Mo.App. E.D.1996).[5]

The Jones Store complains that Mathis failed to establish that the slippery condition existed for a length of time sufficient to allow the Jones Store to have remedied the condition or warned its invitees of the situation. Traditionally, to prove constructive notice of a dangerous condition, the plaintiff had to show the condition existed for a sufficient length of time to constitute constructive

knowledge. *See Prier v. Smitty's Supermarkets, Inc.*, 715 S.W.2d 579, 580 (Mo.App. S.D. 1986); *Ward v. Temple Stephens Co.*, 418 S.W.2d 935, 938 (Mo. banc 1967). However, *Sheil v. T.G. & Y. Stores Co.*, 781 S.W.2d 778 (Mo. banc 1989) and its progeny have abrogated the importance of the time element, holding that a plaintiff can make a submissible "constructive knowledge" slip and fall case against a store owner without showing that the danger existed for a certain length of time. *Head v. National Super Mkts., Inc.*, 902 S.W.2d 305, 307 (Mo.App. E.D. 1995); *See also Moss v. National Super Mkts., Inc.*, 781 S.W.2d 784, 785 (Mo. banc 1989); *Braun v. George C. Doering, Inc.*, 907 S.W.2d 371, 374 (Mo.App. E.D.1995); *Morrison v. St. Luke's Health Corp.*, 929 S.W.2d 898, 903 (Mo.App. E.D.1996).

■ In any event, proof of constructive knowledge is required only where the plaintiff has failed to demonstrate actual knowledge. *Nickerson v. Moberly Foods, Inc.*, 781 S.W.2d 87, 90 (Mo.App. W.D.1989). Where an agent of the defendant has actual knowledge of a spill and, therefore, knows or should know that a dangerous condition exists, notice is imputed to the defendant. *Breckenridge v. Meierhoffer–Fleeman Funeral Home, Inc.*, 941 S.W.2d 609, 612–13 (Mo.App. W.D.1997). Notice may be proven by circumstantial evidence as long as the facts proved and the conclusions drawn therefrom are of such a nature and are so related to each other that the conclusions may be fairly inferred. *Head*, 902 S.W.2d at 306.

■ Jones Store employee, Mary Smith, testified that she saw the "bag lady" remove an aerosol can from the cleaning cart and spray her body, in a circular motion, from the knees up, while standing on a tile floor. From this evidence, it may reasonably be inferred that the can contained some sort of cleaning solution and that some of the solution fell to the tile floor. Smith admitted that when spraying an aerosol can in a circular motion some of the residue is likely to

---

**5.** "The general duty owed to an invitee by the owner of the premises is the exercise of reasonable and ordinary care in making the premises safe." *Morrison v. St. Luke's Health Corp.*, 929 S.W.2d at 903. "What is reasonable depends upon the nature and the circumstances surrounding the business conducted." *Id.*

land on the floor; that cleaning products left on a tile floor could be slippery; and, that if someone slipped on the substance they could fall and hurt themselves. She further testified that it was the Jones Store's policy to call maintenance whenever there was a spill on the floor. Based on Smith's testimony, the jury could reasonably conclude that the Jones Store knew or should have known that, as a result of the "bag lady's" actions, the floor was left in a dangerous condition. Mathis was not required to prove the length of time the cleaning solution remained on the floor to establish constructive notice, because it could reasonably be inferred from the evidence that the Jones Store had actual notice of the condition. *Nickerson,* 781 S.W.2d at 90.

"A directed verdict in favor of defendant is proper only if reasonable minds could not differ as to the proper verdict when the evidence is viewed in a light most favorable to plaintiff." *Uhle v. Tarlton Corp.,* 938 S.W.2d 594, 597 (Mo.App. E.D.1997). Because reasonable minds could differ as to whether the Jones Store had knowledge of the dangerous condition, the trial court did not err in denying the Jones Store's motions for directed verdict and judgment notwithstanding the verdict. Point denied.

■ In its third point, the Jones Store claims the trial court erred in granting Rite–Way's motion for directed verdict on the issue of indemnification.[6] Specifically, the Jones Store contends the following provision in Rite–Way's service contract obligated it to indemnify the Jones Store for any damages assessed at trial:

> INSURANCE PROTECTION: "Rite–Way" Janitorial carries the proper comprehensive general liability, property and public liability, workman's compensation and bonding to protect the client and "Rite–Way" Janitorial....

The trial court granted Rite–Way's motion for directed verdict, finding the contractual language was insufficient "as a matter of law,

to require Rite–Way to remain in the case and indemnify or defend or pay any damages that may be assessed."

■ In Missouri, a contract will be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts only where such intention is expressed in unequivocal terms. *Howe v. Lever Bros. Co.,* 851 S.W.2d 769, 772 (Mo. App. E.D.1993). Thus, in order for the Jones Store to prevail on its claim of indemnification, the contract must evince a clear, unequivocal intent by Rite–Way to defend claims brought against the Jones Store based the Jones Store's own negligence. Here, the provision relied upon by the Jones Store obligates Rite–Way only to provide "proper comprehensive general liability, property and public liability, workman's compensation and bonding...." Contrary to the Jones Store's contention, this language does not manifest an unequivocal undertaking to insure the Jones Store from loss caused by its own negligence. In the absence of the requisite intention to indemnify, the Jones Store's third party petition fails. *Allison v. Barnes Hosp.,* 873 S.W.2d at 293. The court did not err in directing a verdict for third-party defendant Rite–Way. *Id.* Point denied.

■ In its fourth point, the Jones Store contends the trial court erred in not striking the venire panel after Mathis' counsel improperly referred to attorneys' fees during voir dire. The Jones Store maintains that it was prejudiced by this reference because it had "the effect of telling the jury to inflate any verdict so as to compensate the attorney."

During voir dire, Mathis' counsel posed the following question to the jury panel:

> ... Let me ask a general question and then I want to come back because we want to resolve this. I want to ask some follow-up questions. Anybody here other than Mr. Tilman that you have a particular dislike for lawyers in general? I mean, we've all probably got some lawyers we don't

<hr />

**6.** The Jones Store's third-party petition alleges: (1) Rite–Way was negligent in performing its services pursuant to the janitorial contract, and (2) Rite–Way breached its contractual obligation to provide sufficient insurance to protect and

indemnify the Jones Store. The Jones Store eventually abandoned its negligence claim and elected to proceed solely upon its breach of contract claim.

like, but you just don't like the whole profession or how about this? Anybody here who just generally thinks lawyers are cheats or dishonest? Or is there anybody here who you have read on the subject or whatever and you just don't like the way that lawyers get compensated for the work they do? You think that's a rip off or something. We've got a couple alright.

Thereafter, a few venirepersons indicated that they disliked the billing practices used by attorneys. Mathis' counsel then responded:

Obviously the arrangement that I have with these folks is a little different than an hourly rate as you know. Is there anything about that— and it's a very valid complaint in many instances, I'm sure. Now, anything about that that would keep you from being fair?

Following voir dire, the Jones Store and Rite–Way moved to strike the entire jury panel, arguing that the jury now knew that Mathis' counsel was being paid on a contingency basis and would award Mathis additional damages to compensate for her attorneys' fees. The trial court denied the motion, noting that the defendants neither timely objected to the comments, nor produced any caselaw supporting the granting of a new trial.

■■■■ "It is an elementary principle of law that matters complained of on appeal must be preserved for review by objection." *Drury v. Missouri Pac. R.R.*, 905 S.W.2d 138, 148 (Mo.App. E.D.1995). Having failed to object to the suspect comments at trial, our review on appeal is limited to plain error under Rule 84.13. *Vancil v. Carpenter*, 935 S.W.2d 42, 48 (Mo.App. W.D.1996). Plain error review is rarely granted in civil cases, and relief is available only where there has been plain error affecting substantial rights which may have resulted in manifest injustice or a miscarriage of justice. *State ex rel. Missouri Highway & Transp. Comm'n v.*

*Quiko*, 923 S.W.2d 489, 493 (Mo.App. S.D. 1996).

What may be asked on voir dire is left largely to the discretion of the trial court. *State v. Copeland*, 928 S.W.2d 828, 852 (Mo. banc 1996). At the hearing on the Jones Store's motion for new trial, the court explained why he allowed Mathis' counsel to respond to the jurors' comments:

In regard to the issue of the reference to attorney's fees, I do not have a transcript in front of me but I do recall the incident. It happened in voir dire. It happened during the course of [Plaintiffs' counsel's] examination of the jurors and it was actually his responses to a juror's questions as I remember and him just trying to explain because we're now getting all kinds of juries in lots of cases now talking about how dissatisfied they are with trials, how they think lawyers are too expensive and trying too many cases and getting all kinds of ridiculous fees because that's what they read in the paper and that's what they see on the news. . . . Lawyers are obligated to respond to that. They have to do that to protect their clients and to make sure they don't get individuals who are highly prejudiced on the jury . . .

Had defense counsel asked me to instruct the jury that attorneys' fees or the relationship between the attorney and his client or their contract is totally irrelevant to this case, I would have been more than happy to tell them that. . . .

We find no abuse of discretion resulting in error, plain or otherwise. Point denied.

■■■ Finally on cross-appeal, Mathis contends the court erred in awarding the Jones Store a credit against the judgment for medical expenses paid on Mathis' behalf. Mathis claims the Jones Store failed to demonstrate that the payments were made as an accommodation to her in anticipation of litigation, as required by § 490.710.[7]

7. Section 490.710 provides in pertinent part:
  1. No advance payment or partial payment of damages, predicated on possible tort liability, as an accommodation to an injured person, or on his behalf to others, or to the heirs at law or dependents of a deceased person, of medical expenses, loss of earnings and other actual out-of-pocket expenses, because of an injury, death claim, property loss or potential claim against any person shall be admissible into evidence as an admission against interest or admission of liability by such party or self-insurer, or if paid

Section 490.710 "provides that an advance payment or partial payment of damages or of medical expenses, and other expenses not applicable here, predicated on possible tort liability, shall be deducted from any final judgment rendered in favor of an injured person." *Wegeng v. Flowers*, 753 S.W.2d 306, 309 (Mo.App. W.D.1988). The purpose of the statute is to prevent a double recovery from one loss. *Rook v. John F. Oliver Trucking Co.*, 556 S.W.2d 200, 202 (Mo.App. E.D.1977). However, a motion for credit pursuant to § 490.710 is not self-proving, and the Jones Store bore the burden of proving it was entitled to the credit. *Keith v. Burlington N. R.R.*, 889 S.W.2d 911, 925 (Mo.App. S.D.1994).

The evidence adduced at the hearing on the motion for credit reveals that Mathis made claims against the Jones Store, prior to suit, for expenses she incurred from the accident, and that these expenses were paid by the Jones Store's insurance company, Liberty Mutual Insurance Company. In his own words, Mathis' counsel advised the trial court that he had reviewed Liberty's payment records and agreed that they "reflected payments in the amount of $14,128.90 to the various health care providers— for treatment to Mary Mathis." The Jones Store established that Liberty's payment of Mathis' medical expenses was predicated on its possible tort liability arising from the slip and fall. The trial court did not err in granting the Jones Store a credit against the judgment. Point denied.

The judgment is affirmed.

All concur.

by an insurer of such party, as the insurer's recognition of such liability with respect to such injured or deceased person, or with respect to any other claim arising from the same accident or event.
2. Any payments made as provided in subsection 1 of this section shall constitute a credit and be deductible from any final settlement made or judgment rendered with respect to such injured or deceased person. In the event of a trial involving such a claim, the fact that such payments have been made shall not be brought to the attention of the jury.