Anthony PARRA, Appellant,

v.

**BUILDING ERECTION SERVICES,**
Respondent.

No. WD 54903.

Missouri Court of Appeals,
Western District.

Dec. 15, 1998.

James D. Scherzer, Kansas City, MO, Michael W. Manners, Independence, MO, for Appellant.

Paul C. Gurney, Overland Park, KS, for Respondent.

Before SPINDEN, P.J., and ULRICH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Anthony Parra appeals from the judgment of the circuit court directing a verdict against him at the close of his evidence for failure to make a submissible case on his negligence claim for damages against the respondent, Building Erection Services, for injuries he alleged he received from being struck by a wire rope cable of a crane which was being rented from the respondent by the appellant's employer.

In his sole point on appeal, the appellant claims that the trial court erred in granting the respondent's motion for a directed verdict because he had made a submissible case of negligence. Specifically, he contends that the trial court erroneously declared and applied the law in directing a verdict for the respondent in that in doing so it incorrectly held that to make a submissible case of negligence, he was required, but failed, to adduce expert testimony to establish the "duty/standard of care" owed to him by the respondent.

We reverse and remand.

### Facts

The appellant filed suit against the respondent in the Circuit Court of Jackson County alleging that he was injured and sustained damage as a result of the respondent's negligence in failing to secure a cable of a crane rented by the respondent to the appellant's employer. The appellant was injured on October 23, 1990, while working as an ironworker on the construction of the Plaza Steps Building in Kansas City, Missouri. The crane was furnished to the appellant's employer with an operator and mechanic. The mechanic, among other things, supervised the ironworkers, including the appellant, in rigging the crane for use in moving construction materials on site.

The crane assembly consisted of a boom, a jib, and a 1 1/8–inch wire cable connected to a headache ball, which was approximately eighteen inches in diameter and weighed more than 900 pounds. At the bottom of the ball was a hook which was used to lift loads of construction material. The ball was connected to the cable by a device called a beckett which fit inside the ball. The cable ran from the boom through the beckett and back out with extra line called a tail. The tail, ordinarily, was fastened back to the main cable by two clamps which kept it from flying out because of centrifugal force when the headache ball would spin after a heavy load was picked up or released.

In mid-September of 1990, the respondent rented the crane to the appellant's employer. It was first used in the basement of the construction of the Plaza Steps Building. It was later moved up to street level. It had to be disassembled and reassembled by the ironworkers to provide for a longer boom to raise structural steel. To accomplish this task, the respondent assigned its mechanic, Mike Millsap, to supervise the ironworkers, including the appellant. In disassembling the crane, the ironworkers were required to remove the two clamps securing the tail. Because the higher of the two clamps could not be removed in the normal fashion, Mr.

Millsap instructed the ironworkers to burn it off with a welding torch.

When the crane was reassembled, only one clamp was left to clamp the tail. The appellant told Mr. Millsap that they needed another clamp but that he did not have one and was going to cut off the tail because it was too long. The tail was estimated at sixteen to twenty-four inches. Mr. Millsap instructed him not to cut off the tail, that he would get a clamp the following day. However, one was never provided. As a result the tail was allowed to spin free, except for the period of time when it was taped or wired back.

The appellant was injured on October 23, 1990, when he was guiding a skip box (a basket in which construction materials were placed for moving) from one floor to the next. When the skip box landed on the floor, the headache ball spun, the tail whipped out and struck the appellant in the head, causing him serious injury.

At trial, the appellant did not adduce any expert testimony as to the existence or breach of a duty owed to him by the respondent. The respondent filed a motion for a directed verdict at the close of the appellant's evidence claiming that he had failed to produce any expert testimony establishing a duty to use cable clamps or a standard of care with respect to the use and necessity of cable clamps. The motion was ultimately sustained by the trial court with judgment being entered for the respondent on July 16, 1997. On August 14, 1997, the appellant moved for a new trial which was overruled on September 4, 1997.

This appeal follows.

### Standard of Review

■ In reviewing the trial court's directed verdict for the respondent at the close of the appellant's evidence, we review to determine if the appellant made a submissible case of negligence. *Bond v. California Compensation & Fire Co.*, 963 S.W.2d 692, 695–96 (Mo.App.1998) (citing *Rustici v. Weidemeyer,* 673 S.W.2d 762, 765 (Mo. banc 1984)). In determining whether the appellant made a submissible case, we are required to view the evidence and all reasonable inferences there-

from in the light most favorable to the appellant's case and disregard all evidence to the contrary. *Id.* at 696 (citing *Mathis v. Jones Store Co.*, 952 S.W.2d 360, 365 (Mo.App. 1997)).

■ Each and every element which is essential to establishing liability must be supported by substantial evidence from which the trier of fact could reasonably decide the case. *Id.* (citing *Mathis,* 952 S.W.2d at 366). A directed verdict is proper if one or more of the elements of a cause of action are not supported by substantial evidence. *Mathis,* 952 S.W.2d at 366.

■ A directed verdict is a drastic action and should be granted only if reasonable persons could not differ as to the outcome of the case. *Gamble v. Bost,* 901 S.W.2d 182, 185 (Mo.App.1995).

[A] presumption is made in favor of reversing the trial court's grant of a directed verdict unless the facts and any inferences from those facts are so strongly against the plaintiff as to leave no room for reasonable minds to differ as to a result.

*Friend v. Holman,* 888 S.W.2d 369, 371 (Mo. App.1994).

### I.

The appellant claims that the trial court erred in granting the respondent's motion for a directed verdict because he had made a submissible case of negligence. Specifically, he contends that the trial court erroneously declared and applied the law in directing a verdict for the respondent in that in doing so it incorrectly held that to make a submissible case of negligence, he was required, but failed, to adduce expert testimony to establish the "duty/standard of care" owed to him by the respondent. We agree.

■ In order to make a submissible case of negligence against the respondent, the appellant was required to plead and prove: (1) the existence of a duty on the part of the respondent to protect him from injury; (2) a breach of the respondent's duty; and (3) an injury to him directly and proximately resulting from the breach. *Bond,* 963 S.W.2d at 697. As to these required elements, the trial court, in sustaining the respondent's motion

for a directed verdict, found that the appellant had failed to establish the first proof element, the duty/standard of care owed to him by the respondent, in that, in order to establish the same, expert testimony was required and none was adduced. The issue then, initially, is whether the appellant made a submissible case of negligence against the respondent without adducing expert testimony to establish the first proof element of a negligence action, the existence of a duty owed by the respondent to the appellant.

In considering whether a duty exists in a particular case, the court must weigh, *inter alia,* the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant. *Bunker v. Association of Mo. Elec. Coops.,* 839 S.W.2d 608, 611 (Mo. App.1992). "The common denominator that must be present is the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care." *Id.* In making this determination, we refer "to the body of statutes, rules, principles and precedents which make up the law." *Kopoian v. George W. Miller & Co.,* 901 S.W.2d 63, 68 (Mo.App.1995). As such, "[a]n analysis of the issue of duty begins with an examination of the source of the duty." *Id.*

In determining the source of any duty owed by the respondent to the appellant, we logically must first examine the pleaded basis for the appellant's claim of negligence. In this respect, the appellant alleged in his petition that the respondent, as the lessor of the crane, owed him a duty to exercise ordinary care to determine whether it was in fact safe at the time of its delivery to his employer, and if not, to either repair it or warn of the danger. As to the exact danger alleged by the appellant in his petition, there is a disagreement between the parties.

Relying on paragraph 2 of the appellant's petition, the respondent contends that the appellant's sole pleaded specification of negligence was that "the wire rope cable assembly of the crane had an improperly configured end in that it did not have the correct number of clamps/clips securing the cable loop." The appellant contends that he did not limit the alleged negligence of the respondent to the issue of the number of clamps/clips used, but pled negligence on the basis of the respondent's failure to secure properly the cable, which could encompass the issue of the number of clamps used. In this regard, the appellant points to paragraph 4 of his petition where he alleged that "the loose end of the crane's wire rope cable should have been properly secured and to operate the crane in this condition was negligent with wanton disregard for the safety and lives of others on the construction site."

A fair implication from reading paragraphs 2 and 4 of the appellant's petition is that he was not limiting his assignment of the respondent's negligence to its failure to use the correct number of clamps/clips on the cable assembly, but was asserting negligence based on the respondent's failure to secure properly the cable assembly in some reasonable fashion. Thus, the appellant's pleadings were consistent with a submissible case of negligence against the respondent for its failure to secure properly the cable assembly, with or without demonstrating the correct number of clamps that should have been used, in which instance the allegation in paragraph 2 of the appellant's petition would be treated simply as surplusage. *Comte v. Blessing,* 381 S.W.2d 780, 784 (Mo.1964). As such, in determining whether the appellant made a submissible case of negligence against the respondent without adducing expert testimony on the issue of whether the respondent owed a duty to the appellant, we do so in light of the appellant's pleaded specification of negligence, that the respondent failed to secure properly the cable tail, causing it to be dangerous when the crane was put to its intended use.

Having established the alleged basis for the appellant's claim of negligence, we now turn to the question of whether, if proven, a duty arises therefrom.

"In cases where there is no statutory duty imposed with regard to the particular allegation of dangerous condition, we must look to the case law to see if the law

has recognized a duty." *Kopoian*, 901 S.W.2d at 69. Because our review reveals no specific statutory duty with respect to the dangerous condition alleged in the appellant's petition, we turn to the case law. Our review of the applicable case law leads us to the conclusion that Missouri does recognize a duty of a lessor to exercise reasonable care to provide an instrumentality to a lessee employer which is reasonably safe for the intended use by the lessee's employee. *Polovich v. Sayers*, 412 S.W.2d 436, 439 (Mo.1967) (*citing Hudson v. Moonier*, 102 F.2d 96, 99 (8th Cir.1939)). *Whitney v. Central Paper Stock Co.*, 446 S.W.2d 415, 418 (Mo.App. 1969). In this respect, the lessor is "required to exercise ordinary care to determine whether the [instrumentality] was in fact safe at the time of its delivery to the employer's premises, and if not to either repair it or warn of the danger." *Whitney*, 446 S.W.2d at 418. This duty and standard of care is consistent with the required findings of MAI 25.10(B) [1995 Revision], which is the verdict director for "Negligently Supplying Dangerous Instrumentality for Supplier's Business Purposes." It is also consistent with the obligation imposed by §. 392 of the *Restatement of Torts, Second*, requiring a supplier of an appliance "to exercise reasonable care to make the chattel safe for the use for which it is supplied." Thus, in the case of a leased instrumentality, the lessor does have a duty to an employee of the lessee-employer to exercise ordinary care to determine whether it was safe at the time of its delivery to the employer or thereafter, depending on the circumstances, and if not, to either repair it or warn of the danger.

■■■ Generally, the duty of a lessor as to the leased instrumentality does not extend past the time of its delivery, absent some agreement between the parties to provide continuing maintenance. *Polovich*, 412 S.W.2d at 439; *Whitney*, 446 S.W.2d at 418. In other words, absent some exception, the lessor has no duty as to a defect that arises through no fault of his or her own and of which he or she had no notice after the delivery of the instrumentality. *Polovich*, 412 S.W.2d at 439; *Whitney*, 446 S.W.2d at 418–19. However, there are exceptions, *i.e.*, where a lessor furnishes a construction con-

tractor with an instrumentality, the duty continues with respect to that instrumentality as "to such matters over which [the lessor] retains control, or undertakes to perform." *Polovich*, 412 S.W.2d at 439 (*citing Hudson*, 102 F.2d at 99). As such, the duty would extend past the initial date of delivery where, as here, the lessor undertook during the lease to supervise the assembly and disassembly of the crane.

■■■ Having determined that, in the case of a leased instrumentality, the lessor does have a duty to an employee of the lessee to exercise ordinary care to determine whether it was safe at the time of its delivery to the employer or thereafter, depending on the circumstances, as discussed, *supra*, and if not, to either repair it or warn of the danger, we now turn to the question of whether the appellant was required to adduce expert testimony at trial to establish this duty.

■■■ It is well settled that the existence of a duty owed by an alleged tortfeasor necessary to establish a submissible case of negligence is a question of law to be determined by the trial court viewing the evidence in a light most favorable to the plaintiff. *Lockwood v. Jackson County*, 951 S.W.2d 354, 357 (Mo.App.1997); *Kopoian*, 901 S.W.2d at 68; *Burns v. Black & Veatch Architects, Inc.*, 854 S.W.2d 450, 453 (Mo. App.1993); *Bunker*, 839 S.W.2d at 611. As such, although expert testimony might be relevant to help establish some underlying fact on which duty may ultimately rest, whether a duty exists is not a question for expert testimony, but one for the trial court based on the facts viewed in a light most favorable to the plaintiff. *Burns*, 854 S.W.2d at 453. "Expert opinion testimony deals only with whether there was a breach of a legally existing duty." *Id.* In light of this fact and given the nature of the alleged duty owed by the respondent to the appellant, as discussed, *supra*, we fail to see how expert testimony would have been required of the appellant to establish this duty, contrary to the trial court's finding on which its directed verdict was based.

As to whether there was a sufficient factual basis in the record to establish the necessary relationship between the parties on which duty was predicated here, as discussed, *supra*, the answer is yes. The appellant presented substantial evidence which, when viewed in a light most favorable to him, established that the respondent leased the crane to the appellant's employer and that at the time it was dangerous due to the unsecured cable, a fact of which the respondent was aware in that its mechanic supervised the assembly of the crane at the work site and advised the lessee's employees to burn off the second clamp, leaving an unsecured tail of sixteen to twenty-four inches, and that he would provide another one at a later date, which he did not do. And, even if it could be argued somehow that the alleged defect occurred after delivery, as the respondent contends in its brief, the respondent's mechanic's supervisory role in assembling the crane would be sufficient to impose a duty as to the alleged danger of the unsecured cable.

Given the foregoing, it appears, as the appellant asserts in his brief, that the trial court, in dismissing the appellant's petition for failure to establish a duty/standard of care owed with expert testimony, misspoke and that it was, in fact, directing a verdict for his failure to establish with expert testimony a breach of the duty owed, the second required proof element for a submissible case of negligence. Regardless of whether the trial court's reasoning was correct, because we will affirm the decision of the trial court directing a verdict for the defendant if it reached the correct decision, regardless of the reason given, *Runny Meade Estates, Inc. v. Datapage Technologies Int'l, Inc.*, 926 S.W.2d 167, 170 (Mo.App.1996), we will review to determine whether the record was sufficient to support a breach of the respondent's duty to the appellant.

In cases of alleged "professional" negligence, with some exceptions, expert testimony is required to establish the proof element of a breach of duty. *Yantzi v. Norton*, 927 S.W.2d 427, 430–31 (Mo.App.1996); *Annen v. Trump*, 913 S.W.2d 16, 20 (Mo.App. 1995); *Cebula v. Benoit*, 652 S.W.2d 304, 307 (Mo.App.1983). Otherwise, the general rule is that expert testimony is not necessary to establish the element of a breach of duty, unless the subject in question is not within the knowledge or experience of lay people. *Jake C. Byers, Inc. v. J.B.C. Invs.*, 834 S.W.2d 806, 818 (Mo.App.1992); *Nagy v. Missouri Highway and Transp. Comm'n*, 829 S.W.2d 648, 653 (Mo.App.1992). In other words, expert testimony is not required "when the fact finder [has been] given enough information to be able to evaluate the facts of a case." *Jake C. Byers, Inc.*, 834 S.W.2d at 818. The rationale for requiring expert testimony in certain circumstances was explained by the Missouri Supreme Court in *Fisher v. Wilkinson*, 382 S.W.2d 627, 632 (Mo.1964) (*quoting Pedigo v. Roseberry*, 340 Mo. 724, 102 S.W.2d 600, 607 (Mo.1937)) as follows:

> If laymen ... are not to be guided on issues requiring peculiar and thorough special training in a science or art beyond the experience and knowledge common to mankind by witnesses possessing the necessary testimonial qualifications, juries will be cast into a river of doubt and must establish an arbitrary standard of their own founded upon conjecture and surmise in their effort to reach certain and sure ground.

Hence, in determining in the instant case whether expert testimony was required to establish the negligence proof element of a breach of duty, we must decide, viewing the record in a light favorable to the submission of the appellant's negligence claim, whether the jury had sufficient knowledge and experience to determine whether the alleged unsecured crane cable was unreasonably dangerous. The answer is yes.

Viewed in a light most favorable to the appellant, the evidence established that the cable configuration of the crane was such that an unsecured cable tail, approximately sixteen to twenty-four inches in length and one and one-eighth inches in diameter, was allowed to spin free, which struck and injured the appellant. In this regard, the appellant presented evidence concerning the assembly of the crane through his own testimony and the testimony of three other ironworkers, none of whom, in the eyes of the

trial court, were qualified as expert witnesses in crane assembly, specifically cable configuration. However, whether the sixteen- to twenty-four-inch, unsecured wire rope cable posed a danger was a subject within the experience or knowledge of the jurors, not requiring expert testimony. And, because the issue of whether the cable being unsecured was dangerous was a subject within the experience and knowledge of the jurors, we find the trial court erred in directing a verdict for the respondent on the basis that the appellant, in order to make a submissible case of negligence, was required and failed to adduce expert testimony on the issue in question. *Peterson v. Summit Fitness, Inc.*, 920 S.W.2d 928, 932 n. 1 (Mo.App.1996); *Jake C. Byers, Inc.*, 834 S.W.2d at 818.

### Conclusion

The judgment of the circuit court granting the respondent's motion for directed verdict at the close of his evidence is reversed and the cause is remanded to reinstate the petition of the appellant.

All concur.