**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Robert J. GRAY, Defendant–Appellant.**

**No. 52090.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 3, 1987.

Motion for Rehearing and/or Transfer Denied Dec. 10, 1987.

Layne C. Lohr, Asst. Public Defender, St. Louis, for defendant-appellant.

Carrie D. Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Judge.

Robert Eugene Gray appeals from his conviction for two counts of robbery in the first degree and one count of armed criminal action following a jury trial. The trial court found defendant to be a prior offender and sentenced him to prison for two concurrent terms of fifteen years on the two robbery convictions with a consecutive term of three years on the armed criminal action for a total of eighteen years. We affirm.

Defendant does not challenge the sufficiency of the evidence. The evidence at trial established that on the night of January 2, 1986, victims Gina Zelenovich and Rose Vitale, both students at St. Louis University in the City of St. Louis, were leaving a liquor store near the university when they were accosted by defendant and another man. Defendant held out a gun and took Rose's purse and two gold necklaces from her as she stood near the driver's side of her car. Defendant then approached Gina who was standing on the passenger's side of the car and ordered her to give him her purse and bracelet. Defendant's accomplice stood toward the front of Rose's car during the robbery. After taking their purses and jewelry, defendant told victims to "get in your car and leave." Victims complied, and immediately drove to the university's student center to contact the police. They told police they had been robbed by two big black men and described defendant as wearing dark pants and a down-type jacket with light vest and dark sleeves. They returned with police to the scene of the crime. Mr. Eddie Lee Johnson, the liquor store owner, upon discovering the police were on his parking lot, learned that the two young women had

been robbed. Defendant, who had been in Mr. Johnson's store earlier in the evening, returned later that night. When Mr. Johnson asked defendant if he were involved in the robbery, defendant denied it.

Within two weeks after the robbery, each of the victims had, on separate occasions, an opportunity to review a photo array of four suspects, including defendant's photograph. Both victims identified defendant as the gunman.

When defendant learned that the police were looking for him, he turned himself in. During a subsequent lineup, each victim separately viewed the lineup and each picked out defendant. Despite defendant's contention of mistaken identity, the jury found defendant guilty as charged.

Defendant raises four points on appeal. He claims the trial court erred in (1) overruling his motion to suppress the two robbery victims' pretrial lineup identifications of him because the police line-up was unnecessarily suggestive; (2) ordering defendant to provide a 911 police tape in order to refresh the recollection of a prosecution witness before her recollection had been challenged or needed to be refreshed; (3) refusing to sustain defendant's motion for sanctions because certain police reports which defendant had requested earlier in his discovery motion were not received until during the course of the trial; and (4) in not declaring a mistrial after learning that the jurors had been told by a sheriff before the conclusion of the trial that the state had to compel the attendance of one of its witnesses.

Defendant's first point contends the trial court erred in not suppressing the pretrial lineup identifications of defendant by the two robbery victims. He claims the lineups were unnecessarily suggestive because he was the only participant in the lineup wearing a distinctive down-style jacket with a lighter vest part and dark sleeves. Each victim separately viewed the lineup and each positively identified defendant as the gunman.

■ The law governing our scrutiny of the defendant's challenge to the identification testimony is clear. Where a pretrial identification occurs, the court will first consider whether that event was impermissibly suggestive, and thereafter, consider the reliability of the in-court identification. *State v. Toney*, 680 S.W.2d 268, 275[10] (Mo.App.1984). Thus, an out-of-court identification procedure that is suggestive does not invalidate a reliable in-court identification. *State v. Littleton*, 649 S.W.2d 225, 227 (Mo. banc 1983). *State v. Jones*, 735 S.W.2d 87, 89[5] (Mo.App.1987). "Reliability, not suggestiveness, 'is the linchpin in determining the admissibility of identification testimony ...'" *State v. Higgins*, 592 S.W.2d 151, 160[13] (Mo. banc 1979) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977)).

■ In determining reliability, the court looks at the "totality of the circumstances": (1) the opportunity of the witness to view the criminal at the time of the crime: (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *State v. Robinson*, 641 S.W.2d 423, 427[9] (Mo. banc 1982); *accord State v. Jones*, 735 S.W.2d at 89[6].

■ That defendant was dressed in a jacket resembling the one that victims had previously described to the officers on the night of the robbery is not impermissibly suggestive. Defendant agreed to appear in the lineup. When he had turned himself into the police, he was wearing the jacket and nothing in the record reflects that the police forced him to wear the jacket when victims viewed him in the lineup. Further, dissimilarity and physical appearance alone are insufficient to establish impermissible suggestiveness. *State v. Reasonover*, 700 S.W.2d 178, 183[4, 5] (Mo.App.1985). The state also has noted that the victims positively identified defendant from the photo arrays previously shown in which defendant's clothing was not visible.

■ The reliability of the identification dispels any cloud cast by defendant's asser-

tion of suggestiveness. The out-of-court identifications took place within one month of the robbery. Both women had sufficient opportunity to view defendant at the time of the crime. Although the robbery occurred in the evening, there were street lights in the vicinity. Further, each victim testified that defendant stood within an arm's length of each of them as he took their jewelry. Their lineup identifications reflected certitude and accuracy, as did their in-court identifications. Defendant's first point is denied.

Defendant's second point complains of the trial court's action in ordering the defense, despite objection, to provide the prosecution with a "911" call to the police at the university's student center after the robbery. In her call she stated she had been robbed by two big black men. The defense availed itself of the opportunity to have a copy of the tape made for the purpose of possibly impeaching Gina. Defendant argues that the possibility of his attacking her credibility during cross-examination by impeachment was thwarted by letting her review the tape's contents before her recollection had been challenged or shown need of refreshing.

The stumbling block impeding defendant's position is that the tape was a public record. Further, the tape was equally available to both parties and not, as work product might be, the exclusive domain of defendant. We discern little difference between this situation and the common practice where a party suggests to its witness to review the witness's deposition before trial. We find no merit to defendant's second point.

In his third point defendant raises the issue whether sanctions are required when a defendant learns during trial that certain police reports have not been furnished despite defendant's timely request for discovery. Certain police arrest reports contained statements made to police by defendant after he had turned himself into police custody, where he was then advised of his *Miranda* rights. In these statements defendant reportedly denied any involvement in the crime, expressed his desire to be in a lineup and his intention to sue anybody who picked him out. He also declared he did not have a toy or teargas gun and that when he carried a gun, he carried a real gun.

When the defense learned of these statements during the trial before the conclusion of the state's case, the defense requested the court impose sanctions on the state. The trial court complied and ruled the state could not introduce these statements by defendant in its case-in-chief. However, when defendant testified, defense counsel asked him if he had a gun that night and if he had ever carried a gun. Defendant answered "no" to both questions. The trial court then permitted the state, during its cross-examination and over objection, to impeach defendant with his statement from the police report previously unknown and unavailable to the defense that "when he carried a gun, he carried a real gun." Defendant now contends the trial court erred in allowing the admission of this statement because the state failed to notify defendant's counsel of those statements pursuant to a valid discovery request.

Rule 25.03 requires the state, upon written request, to disclose any written statements and the substance of any oral statements made by the defendant. Whether a sanction should be imposed for failure to comply with an appropriate discovery request or order is a matter which lies within the sound discretion of the trial court. *State v. Johnson*, 702 S.W.2d 65, 75[5] (Mo. banc 1985). The court may order disclosure of the statement, grant a continuance, exclude the evidence, or enter other orders as it deems just. Rule 25.16. An abuse of discretion occurs only when the trial court's action results in fundamental unfairness to defendant. *State v. Kerfoot*, 675 S.W.2d 658, 660[1] (Mo.App.1984). The existence of fundamental unfairness is measured by whether or not the evidence or the late discovery of it was likely to have affected the outcome of the trial. *State v. Keeven*, 728 S.W.2d 658, 662[5] (Mo.App.1987).

The trial court did sanction the state here. The court refused to allow the state to present the previously undisclosed evidence in its case-in-chief. Since the defense indicated defendant was going to testify, the state and defense counsel further agreed if the defense avoided reference to defendant's arrest and what defendant had said at the police station and in the interview, then the state would eschew any mention of the statements.

Despite their agreement, defense counsel asked during direct examination of defendant if he had a gun the night of the robbery or if he ever carried a gun. When the state asked to approach the bench, defense counsel immediately apologized, adding she had not meant to ask the question. The state followed with its cross-examination of defendant and asked him if he had told police detectives when he was taken into custody that "When I carry a gun, I carry a real gun".

 By its own line of questioning of defendant on direct examination, defense counsel invited the state's use of the previously undisclosed statements which had otherwise been excluded by the court during the state's case-in-chief and, by the parties' agreement, during defendant's case. Defendant has presented no argument, either to the trial court or to us, demonstrating that the trial court's action resulted in fundamental unfairness to defendant. The critical evidence in this case was the testimony of the two robbery victims and their positive identification of defendant as the man who robbed them. Our examination of the record reveals no fundamental unfairness or prejudice resulting from the state's failure to fully comply with Rule 25.03. While we consider the state's failure in meeting its discovery obligation to be exceedingly careless because such conduct jeopardizes otherwise validly obtained convictions, we conclude in this case that, had the undisclosed statements been made available to defendant before trial, the outcome of the case would remain unchanged.

Defendant's fourth and final point claims the trial court committed reversible error in failing to immediately declare a mistrial after defense counsel learned that the jurors were told by a sheriff that a state's witness had to be forcibly brought into court under warrant.

After a verdict had been rendered and the jury dismissed, the jurors were informally questioned by defense counsel. When asked whether anyone could tell it was obvious that the state was trying to bring a witness in, a juror then disclosed that earlier that morning, before the third day of trial had begun, a sheriff explained to the jury that the delay in trial was because they were waiting on a witness. The juror also stated that when she asked the sheriff if this witness would be served with a contempt citation, the sheriff responded they would serve him with a warrant. Upon learning of this exchange, defense counsel immediately alerted the trial court.

At the behest of defense counsel, the trial court conducted an examination of the individual juror on the record in the judge's chambers. The juror repeated the conversation she had with the sheriff. The transcript does not reflect that defense counsel ever expressly requested the trial court to declare a mistrial. The motion for new trial, however, did contain an allegation of error based on the preceding episode.

Defendant states there was great potential for the jury to have been improperly influenced by the sheriff's comment that the state had to compel a witness to attend. Defendant argues the jury could reasonably infer that the first witness testifying after the delay was the witness whose presence had been assured only after resort to legal process. This witness was Eddie Lee Johnson, the liquor store owner. His reluctance to testify in the state's behalf was occasioned by his friendship with defendant's father. Defendant concludes that, after the sheriff-juror communication had been disclosed to the court, the state did not meet its burden to show that this communication did not improperly influence the jury.

 Defendant is correct in noting upon whom the burden rests. When a

juror engages in an unpermitted communication with a third person which is related to the cause being heard, it is the state's burden to demonstrate that the juror was not improperly influenced. *State v. Klaus,* 730 S.W.2d 571, 580[18] (Mo.App.1987). The trial court, however, is the court which hears the evidence concerning the allegedly improper contact and it is in the best position to determine the credibility of the evidence and the intent of the parties. *Id.* The trial court is thus vested with broad discretion in determining whether the state has demonstrated the harmlessness of the contact. *Id.*

█ Here, the juror who initiated the conversation with the sheriff following his comment concerning the trial delay, was the only witness called. Her testimony indicated no substantive issue was discussed and no comments on the evidence were made.

Any taint by the sheriff's information to the juror that a warrant was served on the witness to compel the witness's attendance at trial was removed where the witness himself testified, in response to the prosecutor's question during the trial, that he was present in court pursuant to a court *subpoena.* Given the witness's own admission that his appearance was compelled, we conclude that there was no error in the trial court's determination that the contact between the juror and sheriff was harmless.

The judgment is affirmed.

KAROHL, P.J., and SMITH, J., concur.