STATE of Missouri, Respondent,

v.

Dennis B. SIMMS, Appellant.

No. 55727.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 23, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 22, 1991.

Application to Transfer Denied
July 23, 1991.

Maribeth McMahon, Asst. Public Defender, Clayton, for appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Judge.

Dennis B. Simms appeals from the judgment rendered by the trial court after a jury found him guilty of attempted robbery first degree under § 564.011, RSMo 1986, and armed criminal action under § 571.015, RSMo 1986. After finding appellant to be a prior, persistent and Class X offender, the trial court sentenced him to concurrent terms of fifteen years' imprisonment for each offense. We affirm.

Appellant does not challenge the sufficiency of the evidence, so we need not relate it in detail. The evidence at trial established the following facts. At about 10:15 p.m. on Saturday, October 24, 1987, the sixteen-year old victim, Robert O'Brien, and Greg Rehg, his twenty-five year old co-worker, were sitting and talking in Greg's truck after having finished work for the evening. The truck was parked on the lot in front of Western Meat Company where both young men were employed. Appellant approached the truck and asked Greg for a cigarette. Appellant then asked them if they were interested in purchasing some guns from him. During their conversation, appellant observed a police car drive by and asked to join them in the truck. Greg said alright and appellant got in the truck beside Robert on the passenger's side. Appellant continued his "sales pitch" for about ten minutes. He left the truck after Robert and Greg told him they were not interested in buying the guns. They did not see where appellant went when he left.

Robert then got out of Greg's truck to go home. Greg drove off as Robert began walking to his home just across the street from Western Meat Company. As Robert crossed the parking lot appellant, who was seated in a car parked on the lot, called out to Robert, again asking if he was sure he was not interested in buying a gun. He mentioned the guns were to the right of the meat shop by a white Mustang car parked behind a nearby gasoline station and offered to show Robert the guns. Robert walked with him toward the Mustang. As soon as they reached the location, appellant demanded money from Robert and grabbed a chain from his neck. They struggled. Appellant stabbed Robert three times with what appeared to be a pocket knife. During the altercation, Robert broke free and ran straight home. He did not waken his parents or call the police. He put large band-aids on his cuts and went to bed.

The next morning when he went to work he told Greg of the night's episode. Both Greg and the store owner persuaded him to call the police and tell his parents. The police began their investigation, leading to appellant's arrest and eventual conviction.

Appellant relies on five points in his appeal. His first four points raise the issues of instructional error, improper rebuttal by the prosecutor during closing argument, juror misconduct, and improper admission of testimony concerning a photographic lineup. His fifth point does not raise an error at trial but seeks post-conviction relief.

We address each in turn. Appellant's first point on appeal claims Instruction No. 5 based on MAI–CR3d 310.10 was erroneous. This is the approved limiting instruction to be given when evidence of defendant's prior convictions is introduced on cross-examination to impeach the credibility of defendant's testimony. The language in the pattern instruction begins: "If you find and believe from the evidence that defendant (was convicted of) (was found guilty of) (pled guilty to) (pled nolo contendere to) the offense of [specify the offense], ...."

Appellant directs our attention to the first sentence of the given instruction which provides in part: "If you find and believe from the evidence that defendant pleaded guilty to and was convicted of the offense of...." Appellant complains the instruction as given was flawed because it included two of the four parenthesized groups from the pattern instruction and

because it changed the order of the parenthesized sections.

Appellant argues the prosecutor's insistence that the instruction contain the words "was convicted of" reflects an attempt "to emphasize that the jury should consider more than appellant's pleas of guilty" to prior offenses and that "[t]he prosecutor wished for the jury to consider as substantive evidence ... that appellant was a bad man."

We disagree. Deviation from the pattern instruction by inclusion of both phrases and changing the order (and use of "pleaded" instead of "pled") constitutes error under Rule 28.02(f). However, we determine under that same rule that it had no prejudicial effect in this case. Appellant testified at trial and admitted during cross-examination that he had previously pleaded guilty and been convicted of the eight offenses specified in the instruction. The phrases used in the instruction were supported by the evidence and did not misstate the law. The phrase "was convicted of" is broad enough to encompass the guilty pleas in this case where judgment was entered and the defendant sentenced. We find no prejudice to the defendant in the instruction's inclusion of both phrases, their order, or use of the word "pleaded."

■ Appellant's final salvo against the instruction criticizes the inclusion of the dates and cause numbers of the various offenses specified in the instruction. Appellant again states that the prosecutor, by listing appellant's various pleas along with their dates and cause numbers, used these unrelated offenses not merely to impeach credibility but also to establish that appellant was a bad man. Here, appellant admitted pleading guilty to eight offenses on certain dates and by cause numbers. The prosecutor elicited the dates and cause numbers to distinguish the offenses, most of which were burglary, second degree, and stealing and some of which were in the same year. We find no error in the specification of the offenses in the instruction. In *State v. Williams*, 632 S.W.2d 266 (Mo. App.1982), we rejected the argument that specific mention of a defendant's offenses

unduly and unfairly emphasizes his prior convictions. *Id.* at 266. We have also observed that "[i]f the prior convictions have already been elicited on cross-examination, we do not see how defendant can be prejudiced by a reference to them in an instruction." *State v. McIntyre*, 735 S.W.2d 111, 113 (Mo.App.1987). Appellant's first point is denied.

■ Appellant's second point contends the prosecutor's rebuttal in closing argument warranted the trial court's declaration *sua sponte* of a mistrial. Earlier in the trial during the presentation of his case-in-chief, the prosecutor asked an officer whether the patrolman who had taken the initial crime report for the case and had first met with victim was still with the police force. The prosecutor then asked whether the patrolman, no longer with the force, was still on good terms with the department. Before the officer could answer, the court sustained defense counsel's objection to its relevancy.

During closing argument appellant referred to the prosecutor's failure to call this patrolman as a witness, implying his testimony would have been unfavorable to the state's case. In rebuttal the prosecutor observed that the officer had recently left the department. Before the prosecutor said anything further, defense counsel objected that such comments related to objections previously sustained. The trial court agreed and instructed the jury to disregard the statement. Appellant did not ask for a mistrial.

On appeal, appellant asserts a mistrial should have been granted *sua sponte* because the prosecutor's rebuttal interjected facts not in evidence and facts that had been excluded for lack of foundation.

■ Plain error affecting substantial rights may be considered on appeal although not properly preserved for review, but only if manifest injustice or a miscarriage of justice will result if relief is not given. *State v. Childers*, 801 S.W.2d 442, 444 (Mo.App.1990). The general rule applicable to this point is that a court should rarely grant relief on assertions of plain

error about closing argument. *State v. Wilkerson*, 796 S.W.2d 388, 392 (Mo.App. 1990). This is true because, in the absence of the specific request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention. *Wilkerson*, 796 S.W.2d at 392 *citing State v. Clemmons*, 753 S.W.2d 901, 907-08 (Mo. banc 1988), *cert. denied* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988).

A plain reading of the record reflects that the prosecutor's comment did not refer to any matters outside the evidence. Testimony that the patrolman was no longer with the police department had been admitted previously with no objection. We also note that the state's closing argument was retaliatory and invited by the remarks of defense counsel. In such circumstances, our courts have generally refused to reverse the cause for improper argument. *Wilkerson*, 796 S.W.2d at 392. We find no basis for concluding that these challenged remarks demonstrated a strong and clear showing that injustice or a miscarriage of justice resulted to warrant the granting of a mistrial *sua sponte*. Point denied.

■ Appellant's third point raises the issue of juror misconduct. Prior to the lunch recess on the first day of evidence, the court duly admonished the jurors not to speak about the case. After lunch, Mr. Kain, a juror's husband who had been in the courtroom as a spectator, approached the prosecutor and began discussing the case with him. The prosecutor immediately brought the matter to the court's attention. Appellant's counsel moved for a mistrial. The trial court first questioned Mr. Kain who stated he had eaten lunch with his wife and two other jurors but that they had not discussed the case. The trial court then questioned the jury and asked for a show of hands whether any member had discussed anything in connection with the case, its lawyers, witnesses or defendant. No one on the jury panel raised his hand. The trial court then excused Mrs. Kain as a juror, moved an alternate in her stead to the jury box, and denied the motion for mistrial.

Appellant asserts that Mr. Kain's lunch with sworn jurors created an opportunity for improper influence warranting the mistrial. We disagree. At the outset, we observe that granting a mistrial is a drastic remedy. *State v. Shelton*, 779 S.W.2d 614, 616 (Mo.App.1989). It should only be utilized where there is grievous error which cannot otherwise be remedied. *Id.* The granting of a mistrial rests largely in the discretion of the trial court because the trial court is in a better position to determine any prejudicial effects from the alleged error. *Id.*

■ Appellant is correct in noting that the state bears the burden to demonstrate that a juror was not improperly influenced when a juror engages in an unpermitted communication with a third person which is related to the cause being heard. *State v. Gray*, 741 S.W.2d 35, 39-40 (Mo.App.1987). The trial court, however, is the court which hears the evidence concerning the allegedly improper contact and it is in the best position to determine the credibility of the evidence and the intent of the parties. *Id.* The trial court is thus vested with broad discretion in determining whether the state has demonstrated the harmlessness of the contact. *Id.*

Here, the trial court directly questioned both the third party Mr. Kain and the jurors. Mr. Kain attested that he had not spoken about the case to the jurors. The individual jurors indicated no such discussions had occurred. The record is bereft of any evidence that the remaining jurors had failed to follow the judge's instruction not to discuss the case among themselves or with others or to allow anyone to discuss it in their presence. *See* MAI-CR3d 300.04. Defense counsel indicated that if Mr. Kain could represent to the court that he had not discussed the matter and if his wife were replaced with an alternate, any apparent problem would be resolved. This is precisely what occurred, dispelling the possibility of improper influence. Appellant's third point is denied.

■ Appellant's fourth point argues that the trial court erred in allowing certain testimony by a police officer, victim and another witness, Greg Rehg, concerning identification of appellant. Appellant contends the pre-trial identification procedure of photo arrays shown to victim and Greg Rehg were impermissibly suggestive because the officer told each of them before showing them the photographs that he believed the perpetrator to be contained within one of the sets of pictures.

Our Missouri Supreme Court has recently discussed this issue in *State v. Vinson*, 800 S.W.2d 444 (Mo. banc 1990), wherein it stated the following:

> To prevail on this point, [appellant] first must demonstrate that the investigative procedures employed by the police were impermissibly suggestive, and then that the suggestive procedures made the identification at trial unreliable. *State v. Williams*, 717 S.W.2d 561, 564 (Mo.App. 1986). While "reliability is the linchpin in determining the admissibility of identification testimony," *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977), [appellant] must clear the suggestiveness hurdle before procuring a reliability review. See *Williams*, 717 S.W.2d at 564, and *State v. Higgins*, 592 S.W.2d 151, 159 (Mo. banc 1979), appeal dismissed, 446 U.S. 902, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980).

800 S.W.2d at 446.

■ As in *Vinson*, the record here reveals no pretrial suggestiveness. Both victim and the witness Greg Rehg were separately shown two different photographic arrays of six photographs each. Each identified appellant in the second array. That the detective had informed them that he believed a suspect was contained in the array does not render it overly suggestive. The detective did not single out any of the photographs, nor did he provide any information whatsoever about any of the individuals shown in the photographs. Line-ups are not unduly suggestive because the victim anticipates the offender. *State v. Caldwell*, 785 S.W.2d 98, 101 (Mo.App.

1990). Identifications are not impermissibly suggestive because a witness knows a lineup includes a suspect whom the police believe the witness might identify. *Id.* "[I]t is implicit in lineup procedure (analogous to photographs) that among the persons in the lineup is one who is suspected by the police as the perpetrator of the crime." *State v. Pieron*, 755 S.W.2d 303, 308 (Mo.App.1988), quoting *State v. Holly*, 697 S.W.2d 250, 252[2] (Mo.App.1985). Nor does the alleged difference in backgrounds of appellant's photographs and the other photographs necessarily render the lineup impermissibly suggestive. *See e.g. State v. Cox*, 740 S.W.2d 275, 277 (Mo.App.1987). However, appellant is not entitled to appellate consideration of any claim that the trial court erred in admitting the photographic array into evidence where this exhibit has not been filed with this Court. Rule 30.05; *State v. Reynolds*, 782 S.W.2d 793, 797 (Mo.App.1989). Any objections to the admission into evidence of exhibits need not be considered on appeal if the exhibits are not filed with the Court. *State v. Grayson*, 668 S.W.2d 153, 158 (Mo.App. 1984).

■ Even if the showing of the photographic array could be construed as suggestive, the in-court identification testimony of both victim and Greg Rehg was reliable because an independent basis supported such testimony. The record reflects that both witnesses had ample opportunity to calmly view appellant for several minutes when he approached them in the parking lot. Both men were in close proximity to appellant for ten minutes or more while all three sat talking inside Greg Rehg's truck. Both identified appellant as the culprit without hesitation. Appellant's fourth point is denied.

■ Appellant's final point avers the "motion court erred in dismissing and denying appellant's Rule 29.15 motion to set aside and vacate his conviction and sentence imposed for the reason that said motion was timely within the meaning of the statute." Appellant states that his post-conviction counsel inadvertently neglected to file the *pro se* motion he had sent. He

argues that, through no fault of his own, appointed counsel "lost or ignored" the motion.

This issue is not properly before us. Appellant has failed to provide any record to this Court regarding his purported Rule 29.15 motion. Appellant has the burden of producing a record supporting the allegations he seeks to prove. *Chamberlain v. State*, 721 S.W.2d 139, 140 (Mo.App.1986). We cannot determine whether a *pro se* motion ever existed, much less whether it was filed, amended, or denied. This court cannot speculate whether appellant actually delivered the *pro se* motion or to whom or when.

 Further, a post-conviction motion is not "filed" until it is lodged in the circuit court's office. *Williams v. State*, 788 S.W.2d 795, 796 (Mo.App.1990). Simms' assertion that he delivered his Rule 29.15 motion to the attorney representing him at the time falls far short of this most elementary requirement. Furthermore, time limitations for filing post-conviction motions are mandatory, *Day v. State*, 770 S.W.2d 692, 696 (Mo. banc 1989), and appellant has acknowledged that any motion, were it to have been filed, would have been untimely.

In denying appellant's final point, we have considered the recent decisions of the Missouri Supreme Court in *Luleff v. State*, 807 S.W.2d 495 (Mo. banc 1991), and *Sanders v. State*, 807 S.W.2d 493 (Mo. banc 1991). We find them inapposite to the case before us. In the context of post-conviction counsel's apparent failure to comply with the provisions of Rule 29.15(e), the Court in *Luleff* held that claims regarding a complete absence of performance by post-conviction counsel ("abandonment") on a motion for post-conviction relief may be heard in the circuit court where the motion is being prosecuted by movant. *Luleff*, 807 S.W.2d at 497. The Court remanded the case to the motion court for a determination of whether appointed counsel in fact

complied with section (e) of the Rule, and noted that if counsel had failed to comply and the failure was not caused by the action or inaction of movant, the court was to appoint new counsel and permit time, if necessary, to amend the *pro se* motion in accordance with Rule 29.15(f). *Id.*, at 498.

Similarly, the Court in *Sanders* extended the *Luleff* holding to instances in which the record reflects that post-conviction counsel has determined there is a sound basis for amending the *pro se* motion but fails to timely file the amended motion as required by Rule 29.15(f). *Sanders*, 807 S.W.2d at 494–95. The Court remanded the case to the motion court for a determination of the cause of the untimeliness and directed the court to consider the amended motion timely filed if the untimeliness did not result from the action or inaction of movant. *Id.* at 495.

Importantly, the Court in *Sanders* noted that the motion court is not the proper forum to address claims of ineffective assistance of post-conviction counsel other than those that allege a failure of counsel to comply with the provisions of Rule 29.15(e) and (f). *Id.* The case before us does not present such a claim. Rather, appellant alleges that post-conviction counsel failed to file the Rule 29.15 motion in the first instance. *Luleff* and *Sanders* were decided strictly within the context of amendments to motions already timely filed and do not alter the mandatory time limitations of Rule 29.15(b).

The judgment of the trial court is affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.