Present:  All the Justices

JUDI TULL, ET AL.

v.  Record No. 970002

HAROLD D. BROWN, SHERIFF OF SURRY COUNTY

OPINION BY JUSTICE CYNTHIA D. KINSER
January 9, 1998

DAVID STRICKLAND, ET AL.

v.  Record No.  970003

HAROLD D. BROWN, SHERIFF OF SURRY COUNTY

FROM THE CIRCUIT COURT OF SURRY COUNTY
Robert G. O'Hara, Jr., Judge

In this appeal, several news media organizations and their representatives (the Media) challenge the circuit court's denial of their requests under The Virginia Freedom of Information Act (FOIA), Code §§ 2.1-340 et seq., for access to audio tape recordings and related materials (911 Tape) concerning an emergency call to the Surry County 911 Emergency Response System (911 System).[1]  The Surry County Sheriff's Office (SCSO), under the direction of Sheriff Harold D. Brown (Sheriff Brown), operates the system and has custody of the requested information.  Because we find that the 911 Tape is an official record that is exempt from disclosure, we will affirm the judgment of the circuit court.

---

[1] The lower court consolidated several petitions for mandamus and injunctive relief with a declaratory judgment action.  Judi Tull, The Daily Press, Inc., W. Alec Cunningham, Times Publishing Company, Brian M. Rafferty, Chesapeake Publishing Corporation, David Strickland, and WAVY-TV filed the petitions for mandamus.  Harold D. Brown, Sheriff of Surry County, filed the application for declaratory judgment.

I.

Surry County established the 911 System in October 1995 and funds its operation with public monies. The SCSO serves as the dispatcher for all 911 calls. When such a call comes into the dispatcher's office, which is located in a portion of the SCSO not accessible to the public, the dispatcher advises the appropriate provider of emergency services of the call for assistance and/or dispatches SCSO deputies to the crisis scene.

The SCSO also uses its recording ensemble in conjunction with the 911 System. The recording ensemble consists of two tape decks located in a locked cabinet in the dispatcher's office. Each deck holds a twelve-inch tape reel capable of recording ten channels simultaneously. One tape is used for each 24-hour period, after which the system automatically switches to the other deck. The recorded tape is removed, placed in a locked storage cabinet, and reused after 30 days unless a police officer needs information on it.[2] Only Sheriff Brown, his secretary, and the chief dispatcher have the code that allows access to these tapes. The system records not only 911 calls, but also all radio traffic over the SCSO radio network and the State Interdepartmental Radio System, and all incoming and outgoing calls over four SCSO telephone lines. SCSO personnel use these lines for official business including criminal investigations. Finally, the system records all conversations between individuals physically in the dispatcher's office.

---

[2] Sheriff Brown agreed to preserve the 911 Tape at issue in this case.

On November 21, 1995, the SCSO dispatcher received a 911 call from the home of Wayne and Lisa Rickman concerning a child who had stopped breathing.  During the next 20 minutes, there were exchanges between the dispatcher and the 911 caller, and between the dispatcher and various law enforcement and rescue personnel.  The child subsequently died at a local hospital, and the SCSO treated the incident as a criminal investigation until an autopsy ruled out any criminal activity as the cause of death.

Beginning on November 27, 1995, because of alleged public concern about the efficiency of the 911 System in responding to this call, Sheriff Brown received several requests from the Media for the 911 Tape made during this incident.  Judi Tull, a reporter with The Daily Press, Inc., made the first request, which encompasses all the information sought by the Media under FOIA:

> I want to listen to the tape recording made at the county dispatch office, containing conversations involving and related to the call from the home of Wayne and Lisa Rickman to the Surry County 911 system on Tuesday, Nov. 21, 1995.  This request includes the call made from the Rickman house to the dispatcher, and any subsequent conversations or calls made by anyone at the dispatch office or other government office in relation to this call.  In addition, I am also asking for any written documents or any information stored electronically or magnetically, related to this dispatch call and actions by the dispatcher, including any information stored in a computer or on disc.

In response to the Media's requests, Sheriff Brown denied access to the actual tape.  He first claimed that the SCSO is not a public body within the meaning of FOIA but has since stipulated that he is a public official.  Sheriff Brown then asserted, as a basis for his denial, that the 911 Tape is not an official record

as defined in FOIA.  Alternatively, he maintained that, if the 911 Tape is an official record, it is exempt from disclosure under Code § 15.1–135.1(B)(5).

Sheriff Brown did, however, provide the Media with a transcript of the recorded conversations relating to this incident.[3]  Because of the repeated requests for access to the actual tape even after he had provided the transcript, Sheriff Brown petitioned the circuit court to declare that the 911 Tape is "not available to the public under the Freedom of Information Act."  The Media then filed several petitions for mandamus and injunctive relief.  After considering all the evidence presented at a hearing, the circuit court, in an order dated October 2, 1996, granted declaratory judgment for Sheriff Brown after making the following specific findings:

1.	The 911 Tapes are not official records subject to FOIA disclosure because the 911 Tapes are not prepared, owned or possessed by the Sheriff in the transaction of public business, as neither the originator nor the recipient of the emergency call would reasonably believe or realize they were transacting public business.

2.	The Court further finds that even if the 911 Tapes are official records, they are exempt from FOIA as noncriminal incident reports required to be kept by the Sheriff pursuant to § 15.1–135.1 of the Code of Virginia in the efficient operation of a law enforcement agency; and

3.	Finally, the court finds that, if not exempt from FOIA by definition or statutory exemption, mandatory disclosure of the 911 Tapes would not be required because the General Assembly intended to exclude from mandatory disclosure information which, if required to be released, would unconstitutionally interfere with

---

[3] A court reporter prepared the transcript after listening to the separate channels on the tape and integrating the various recordings into one document.

the Sheriff's ability to execute the duties of his office; therefore, such information falls outside the coverage of FOIA by the ruling of the Virginia Supreme Court in Taylor v. Worrell Enterprises, 242 Va. 219 [, 409 S.E.2d 136] (1991).

The Media appeal.

## II.

The policy underlying FOIA and its rules of construction are set forth in Code § 2.1-340.1:

By enacting this chapter the General Assembly ensures the people of this Commonwealth ready access to records in the custody of public officials and free entry to meetings of public bodies wherein the business of the people is being conducted. . . .

This chapter shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government. Any exception or exemption from applicability shall be narrowly construed in order that no thing which should be public may be hidden from any person.

See also City of Danville v. Laird, 223 Va. 271, 276, 288 S.E.2d 429, 431 (1982). In applying the statute, we have stated that "[t]he Act is simple and direct in its requirements. If the requested document is an 'official record,' . . . then it 'shall be open to inspection and copying' except 'as otherwise specifically provided by law' . . . ." Associated Tax Service v. Fitzpatrick, 236 Va. 181, 187, 372 S.E.2d 625, 629 (1988) (quoting Code §§ 2.1-341 and 2.1-342(A)). Accordingly, we must decide whether the 911 Tape is an official record, and if it is, we must then determine whether it is exempt from disclosure.

On the first question, the circuit court ruled that the 911 Tape is not an official record[4] because "neither the originator

_____

[4] Code § 2.1-341 defines "official records" as:

nor the recipient of the emergency call would reasonably believe or realize they were transacting public business."  Sheriff Brown expounds on this ruling by arguing that a 911 caller has an expectation that his/her voice and the content of the message will not be available to the public.  He also contends that a 911 call affects only an individual and not the community at large.

Sheriff Brown's position is, however, untenable.  Even if a 911 caller assumes that the call will remain private,[5] the caller's expectation of privacy or claim of confidentiality does not prevent a recording of the call from being prepared "in the transaction of public business."  Moreover, Surry County created the 911 System with public funds to provide for public safety.  The "transaction of public business" includes public safety.  See Blue Cross v. Commonwealth, 221 Va. 349, 358, 269 S.E.2d 827, 833 (1980)("[Police power] includes the power to prescribe regulations to promote the health, peace, morals, education and good order of the people.").  Indeed, every citizen in Surry County relies on the 911 System, and to say that the operation of the system by the SCSO and Sheriff Brown is not "in the

---

[A]ll written or printed books, paper, letters, documents, maps and tapes, photographs, files, sound recordings, reports or other material, regardless of physical form or characteristics, prepared, owned, or in the possession of a public body or any employee or officer of a public body in the transaction of public business.

[5] But see Cincinnati Enquirer v. Hamilton County, 662 N.E.2d 334, 337 (Ohio 1996) ("There is no expectation of privacy when a person makes a 911 call.  Instead, there is an expectation that the information provided will be recorded and disclosed to the public.").

transaction of public business" is simply inaccurate. Furthermore, Sheriff Brown is a public official, see Va. Const. art. VII, § 4, and acts in that capacity when managing the 911 System. Thus, we conclude that the 911 Tape is an official record under FOIA. See State v. Cain, 613 A.2d 804, 809 (Conn. 1992); State v. Gray, 741 S.W.2d 35, 38 (Mo. App. 1987); Cincinnati Enquirer, 662 N.E.2d at 337.

Even though we find that the circuit court erred in holding that the 911 Tape is not an official record, we agree that the tape is exempt from disclosure under Code § 15.1-135.1 as "noncriminal incidents records." This section requires a sheriff to maintain "adequate personnel, arrest, investigative, reportable incidents, and noncriminal incidents records necessary for the efficient operation of a law-enforcement agency" and makes such records exempt from disclosure under FOIA. Code § 15.1-135.1(A). "Noncriminal incidents records" are defined as "compilations of noncriminal occurrences of general interest to law-enforcement agencies, such as missing persons, lost and found property, suicides and accidental deaths." Code § 15.1-135.1(B)(5).

The Media challenge the circuit court's application of this exemption for several reasons. First, the Media argue that the 911 Tape is not a law enforcement record because Surry County, not the SCSO, created and funds the 911 System, and Sheriff Brown is merely the tape's custodian. However, the SCSO operates the 911 System during the performance of its traditional law enforcement responsibilities. The fact that Sheriff Brown

carries out this service on behalf of the county does not make the 911 Tape any less a law enforcement record. Furthermore, Code § 15.1-135.1 directs a sheriff to maintain, "in addition to other records required by law," other enumerated records "necessary for the efficient operation of a law-enforcement agency." One such type of record is "noncriminal incidents records." Code § 15.1-135.1(A).

The Media, however, assert that the 911 Tape does not fall under "noncriminal incidents records" because it is not a compilation. According to the Media, the 911 Tape is only raw data and not an orderly report or summary created by assembling raw data, i.e., a compilation. Nonetheless, we conclude that the tape is a grouping of electronically gathered information and thus a "compilation." The tape at issue in this case is not just a recording of the conversation between the 911 caller and the dispatcher. Rather, it is a recording on multiple channels of all radio traffic handled through the SCSO's dispatch office in addition to conversations occurring on SCSO's four telephone lines and conversations between individuals physically in the dispatcher's office. In short, all activity occurring in the dispatch office as well as that on the four telephone lines is compiled on this tape.

Finally, the Media argue that the 911 Tape is not the kind of "noncriminal incidents" included in this exemption. Yet, 911 calls frequently concern suicides or accidental deaths, which are two of the specific examples included in Code § 15.1-135.1(B)(5). Even the 911 call at issue here involved the initially

unexplained death of a child.

Thus, we conclude that the 911 Tape falls squarely within the exemption set forth in Code § 15.1-135.1(B)(5).  Contrary to the Media's argument, the fact that Sheriff Brown voluntarily provided a transcript of the specific 911 call does not waive his right to deny access to the actual tape under this exemption.[6] See Westminster-Canterbury v. City of Virginia Beach, 238 Va. 493, 503, 385 S.E.2d 561, 566 (1989) ("[E]stoppel does not apply to the state or to local governments when acting in a governmental capacity."); see also Litchfield Plantation Co., Inc. v. Georgetown County Water and Sewer District, 443 S.E.2d 574, 575 (S.C. 1994) (holding that FOIA exemptions not waived by public body's failure to respond).

For these reasons, we will affirm the judgment of the circuit court.[7]

Record Number 970002 -- Affirmed.
Record Number 970003 -- Affirmed.

---

[6] Likewise, the fact that Sheriff Brown recycles the tapes does not affect their exemption under FOIA.

[7] In light of this decision, we do not address the media's remaining assignment of error.  We also do not decide whether the 911 Tape would be exempt under other subsections of Code § 15.1-135.1(B) since Sheriff Brown did not rely on those subsections in denying the Media's requests.  See Code § 2.1-342(A)(2).