Present:  All the Justices

JAMES G. CONNELL, III

OPINION BY
v.  Record No. 001729    JUSTICE LAWRENCE L. KOONTZ, JR.
June 8, 2001

ANDREW KERSEY

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jane Marum Roush, Judge

In this appeal, we consider whether the trial court properly sustained a demurrer to a petition for writ of mandamus.  The petitioner had sought to compel a Commonwealth's Attorney to produce records related to an ongoing criminal investigation or prosecution, asserting that the records were subject to disclosure under The Virginia Freedom of Information Act, Code § 2.1-340, et seq. (FOIA).

BACKGROUND

The parties do not dispute the principal facts.  James G. Connell, III, a resident of Virginia and an attorney-at-law serving as an Assistant Public Defender in Fairfax County, represents Ahmed Jamal Shireh in a felony criminal case being prosecuted by Fairfax County Assistant Commonwealth's Attorney Andrew Kersey.  Connell became aware that Kersey was in possession of one or more police reports containing criminal incident information regarding Shireh's alleged crime.

On April 17, 2000, Connell requested in a letter that Kersey "send [Connell] any and all personnel, arrest, investigative, reportable incidents, and noncriminal incident records, as defined by Code § 15.2-1722, as well as any other records containing criminal incident information, as defined in Code § 2.1-342.2" related to Shireh's alleged crime. (Emphasis added). Copies of the letter were sent by certified mail and hand delivered to Kersey.

Upon receipt of Connell's letter, Kersey telephoned Connell and advised him that, in Kersey's opinion, the records Connell sought were not subject to disclosure during an ongoing criminal investigation or prosecution. According to Kersey, Connell conceded during the telephone conversation that he was unaware of any legal authority that supported his interpretation of the FOIA, but insisted that Code § 2.1-342.2 nonetheless required disclosure of the requested records. Kersey disagreed and declined to provide the records.

On April 28, 2000, Connell, through retained counsel, advised Kersey that, in Connell's opinion, Kersey's failure to "respond[] as required by the [FOIA]" was a violation of the FOIA, and again requested that Kersey forward "records relating to the case of Commonwealth v. Ahmed Shireh" to Connell in order "to dispose of this matter without litigation." (Emphasis added). Connell indicated that if Kersey failed to produce the

requested records, Connell was prepared to file a petition for writ of mandamus to have the records produced and that he would seek "civil penalties against [Kersey] in [his] individual capacity."

On May 2, 2000, Kersey wrote a letter to Connell's counsel again asserting that the records sought were not subject to disclosure under express exemptions within the FOIA. Kersey further noted that Connell's "threat to seek civil penalties against [Kersey] is unfortunate and inappropriate." Kersey indicated his belief that the proposed petition for writ of mandamus was "utterly meritless and unwarranted by law" and cautioned that he might seek sanctions against Connell's counsel if he chose to proceed with the threatened litigation.

On May 5, 2000, Connell's counsel responded to Kersey's May 2, 2000 letter by again disputing Kersey's interpretation of the FOIA. Connell's counsel contended that the FOIA required Kersey to produce "<u>criminal incident information</u>," as requested by Connell. (Emphasis added). Connell's counsel further contended in this letter that Kersey's "continued refusal to provide the requested information . . . only aggravates your violation of the [FOIA's] requirements and strengthens our claim for civil penalties."

On May 8, 2000, Kersey replied to the May 5, 2000 letter, indicating that he believed the request for " 'criminal incident

information' . . . represents a change from Mr. Connell's original letter to me and both your [April 28, 2000] letter and proposed Petition for Writ of Mandamus which demand [records] that contain 'criminal incident information.' "  Kersey conceded that Connell was entitled to request "criminal incident information," but not to receive the original records from which the information was compiled.  In the letter, Kersey provided a summary of the criminal incident information related to the arrest and prosecution of Shireh.

On May 9, 2000, Connell filed a petition for writ of mandamus seeking an order directing Kersey to produce "all documents" within his control containing criminal incident information relating to the arrest and prosecution of Shireh that were subject to disclosure pursuant to Code § 2.1-342.2. Connell also sought attorney's fees and costs and requested that the trial court impose "a civil penalty of not less than $100 nor more than $1,000" against Kersey.  In a supporting memorandum, Connell asserted that the FOIA required the Commonwealth's Attorney to produce copies of the original records containing criminal incident information, and not merely a summary of these records.  Connell further asserted that the requested sanction was appropriate under Code § 2.1-346.1, which provides for civil penalties "against members of public bodies" for willful and knowing violations of the FOIA.  Connell

4

contended that among other evidence of Kersey's willful and knowing violation of the FOIA was his failure to respond to Connell's original request within the time and under the procedures required by Code § 2.1-342.

On May 17, 2000, Kersey filed a demurrer to the petition for writ of mandamus with a supporting brief.[1]  Kersey again asserted that the records originally requested by Connell were exempt from disclosure under Code § 2.1-342.2, and that he had supplied criminal incident information sufficient to satisfy the requirements of that code section.  With respect to the allegations of his failure to comply with Code § 2.1-342 and the request for a civil penalty, Kersey noted that the provisions of the FOIA relied upon by Connell related to requests made to "public bodies."  Kersey asserted that the Commonwealth's Attorney was not a member of a "public body" subject to the provisions of the FOIA cited by Connell.  Kersey also filed an answer and grounds of defense to the petition for writ of mandamus.

---

[1] Kersey also filed a plea in bar asserting that Connell's request was made on behalf of Shireh, who was incarcerated in the Fairfax County Adult Detention Center.  Kersey contended that Code § 2.1-342.01(C) barred incarcerated persons from exercising the rights afforded by the FOIA.  The trial court overruled the plea in bar, and Kersey has not assigned cross-error to that action.  Accordingly, we express no opinion on this issue.

5

On May 19, 2000, the trial court heard argument from the parties on Kersey's demurrer. During that hearing, and in a responding brief filed that same day, Connell contended that the Commonwealth's Attorney, "whose office operations are wholly supported by public funds," is a "public body" as defined in Code § 2.1-341, and that Kersey, as an Assistant Commonwealth's Attorney, is a member of that public body. He further contended that Kersey's failure to comply with the procedures of Code § 2.1-342 constituted a waiver of any exemptions within the statute, that the exemptions asserted by Kersey were in any case not applicable to the records he had requested, and that the disclosure of criminal incident information in summary form was insufficient to satisfy the requirements of Code § 2.1-342.2. Citing Code § 2.1-342(D), Connell contended that the summary information provided by Kersey constituted a "new record" that could not be substituted for existing records unless Connell agreed to accept the summary.

In a letter opinion dated May 23, 2000, the trial court first ruled that Connell was entitled to request "criminal incident information" pursuant to Code § 2.1-342.2. The trial court further ruled that, as defined by the statute, "criminal incident information . . . is not synonymous with a 'public record' as defined in Code § 2.1-341." Thus, the trial court concluded that Kersey was not required to obtain Connell's

agreement before supplying a summary, rather than original records, in response to a request under Code § 2.1-342.2.

The trial court further ruled that the Commonwealth's Attorney's office was not a public body as defined by the FOIA. Accordingly, the trial court concluded that the procedural provisions of Code § 2.1-342 did not apply to Connell's request, nor was Kersey subject to the penalty provisions of Code § 2.1-346.1.

Based upon these rulings, the trial court ruled that Kersey had complied with the requirements of Code § 2.1-342.2 by supplying Connell with criminal incident information in summary form within a reasonable time. On July 10, 2000, the trial court entered an order incorporating by reference the reasoning of its letter opinion and sustaining Kersey's demurrer to Connell's petition for writ of mandamus. By an order dated October 31, 2000, we awarded Connell this appeal.

## DISCUSSION

Connell assigns error to the trial court's determination that the Commonwealth's Attorney is not a "public body" within the meaning of the FOIA and, thus, is not subject to the requirements of Code § 2.1-342. Connell further assigns error to the trial court's ruling that Code § 2.1-342.2 permits the Commonwealth's Attorney to provide "criminal incident information" in summary form rather than through the production

7

of the original records containing that information.  We will address these issues seriatim.

The policy underlying the FOIA and its rules of construction are set forth in Code § 2.1-340.1:

> By enacting this chapter the General Assembly ensures the people of this Commonwealth ready access to records in the custody of public officials and free entry to meetings of public bodies wherein the business of the people is being conducted.

> . . . .

> This chapter shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government. Any exception or exemption from applicability shall be narrowly construed in order that no thing which should be public may be hidden from any person.

> . . . .

> All public bodies and public officials shall make reasonable efforts to reach an agreement with a requester concerning the production of the records requested.

In considering the application of the FOIA in various circumstances, we have not heretofore been called upon to determine whether constitutional officers, such as a Commonwealth's Attorney, are "public bodies" within the meaning of the FOIA.  See, e.g., Tull v. Brown, 255 Va. 177, 181, 494 S.E.2d 855, 857 (1998) (sheriff's contention that his office was not a "public body" was rendered moot by his stipulation that he was a "public official").  Contrary to Connell's contention made

8

on brief and during oral argument of this appeal, <u>Tull</u> does not stand for the principle that public officials, such as constitutional officers, are "public bodies" for purposes of applying the FOIA.

In addition to any "legislative body" and various specified governmental entities, Code § 2.1-341 defines a "<u>Public body</u>" as "any authority . . . or agency of the Commonwealth or of any political subdivision of the Commonwealth . . . supported wholly or principally by public funds."  Connell contends that a Commonwealth's Attorney, whose office is clearly supported by public funds, is both an "authority" and an "agency" of the Commonwealth and of the locality in which he or she is elected. We disagree.

As used in the FOIA, the terms "authority" and "agency" clearly refer to entities to which responsibility to conduct the business of the people is delegated by legislative or executive action.  By contrast, a Commonwealth's Attorney derives his or her authority from the Constitution.  Va. Const. art. VII, § 4. A Commonwealth's Attorney, like a sheriff or other constitutional officer, is undoubtedly a public official, <u>Tull</u>, 255 Va. at 183, 494 S.E.2d 858, but the FOIA distinguishes between "public officials" and "public bodies" in several instances.  Indeed, Code § 2.1-340.1 refers to "public body or public official," clearly indicating that the terms are not

9

synonymous.  Essentially, a public body conducts "meetings" involving the business of the public, whereas a public official may or may not conduct such public meetings.  See, e.g., Code § 2.1-342.01; Code § 2.1-343.  A Commonwealth's Attorney, in the prosecution of a criminal offense, is not conducting a public meeting; it is the trial related to that offense that is open to the public.

Moreover, Code § 2.1-342.2(A) includes an express provision that the term "Law-enforcement official," as used in that code section, "includes the attorneys for the Commonwealth."  If the legislature had intended for Commonwealth's Attorneys, and their offices, to be treated as public bodies under the general definitions in Code § 2.1-341, this express inclusion of Commonwealth's Attorneys in Code § 2.1-342.2(A) would have been unnecessary.

Accordingly, we hold that the trial court did not err in concluding that a Commonwealth's Attorney is not a "public body" within the meaning of the FOIA.[2]  Thus, Connell's request for

---

[2] We permitted The Reporters Committee for Freedom of the Press and the Virginia Coalition for Open Government to file a brief as amici curiae in support of Connell.  On brief, the amici assert that their "interest here is in preserving public access to government documents . . . [which] permits the public to learn how their tax dollars are spent, to benefit from information in government custody, and to hold government officials accountable for their work."  We share the concern expressed by the amici, and note that, contrary to the view

10

criminal incident information pursuant to Code § 2.1-342.2 was not subject to the procedures and time limits prescribed by Code § 2.1-342, which by its express terms relates only to requests made under the FOIA to "public bodies."

We turn now to the remaining issue whether Code § 2.1-342.2 permits the Commonwealth's Attorney to provide criminal incident information to the requester in summary form rather than to provide the original records containing that information. Connell contends that because he specifically relied upon both Code § 2.1-342.2(B) and Code § 2.1-342.2(G) in making his request, he was entitled to the original records and not merely the summary of these records that he received from Kersey. We disagree.

Code § 2.1-342.2(A) defines "Criminal incident information" to mean "a general description of the criminal activity reported, the date and general location the alleged crime was committed, the identity of the investigating officer, and a

stated in their brief, the trial court did not rule that constitutional officers and other public officials were wholly exempt from the provisions of the FOIA. The trial court's ruling was limited to the application of the FOIA to Commonwealth's Attorneys under the circumstances of this case. Similarly, our holding should not be interpreted as placing any restriction on the application of the FOIA to public officials and their offices beyond the narrow focus of this opinion as it relates to FOIA requests made to a Commonwealth's Attorney for records related to ongoing criminal investigations or prosecutions.

11

general description of any injuries suffered or property damaged or stolen." (Emphasis added). In addition, as previously noted this statute provides that the term "Law-enforcement official" includes a Commonwealth's Attorney. Subsection (B) provides that law-enforcement officials, such as the Commonwealth's Attorney, "shall make available upon request criminal incident information relating to felony offenses" subject to the limitation that this information may be withheld where its release is likely to jeopardize or hamper certain legitimate interests regarding the ongoing investigation or prosecution of a particular case. The following subsections of Code § 2.1-342.2 address more specific data, information, or reports and, in some instances, mandate the release of certain information, prohibit the release of other information, and make the release of still other information discretionary. See Code § 2.1-342.2(C)-(F).

Subsection (G) provides that "[r]ecords kept by law-enforcement agencies as required by § 15.2-1722 shall be subject to the provisions" of the FOIA with certain specified exceptions not pertinent to our present analysis. Code § 15.2-1722 requires "the sheriff or chief of police of every locality" to maintain certain records "necessary for the efficient operation of a law-enforcement agency." The statute makes the failure of a sheriff or chief of police to maintain these records a

misdemeanor offense and places the duty to enforce this code section on "the attorney for the Commonwealth."

Significantly, both subsection (G) of Code § 2.1-342.2 and Code § 15.2-1722 specifically refer to law-enforcement "agencies" and not law-enforcement "official[s]," the term found in Code § 2.1-342.2(A). Because the General Assembly specifically included a Commonwealth's Attorney within the definition of law-enforcement official, we are of opinion that it did not intend to include a Commonwealth's Attorney within the provisions of subsection (G). In this context, there is no merit to Connell's generalized assertion that a Commonwealth's Attorney comes within the term "law-enforcement agencies" because he or she is an agent of the Commonwealth for purposes of a request for information under the FOIA. Thus, Code § 2.1-342.2(B) controls our analysis, and we are of opinion that the disclosure of a summary of the original records is consistent with the requirement that the Commonwealth's Attorney provide the requester with a general description of the criminal activity reported therein including the date and general location the alleged crime was committed, the identity of the investigating officer, and a general description of any injuries suffered or property damaged or stolen.

Accordingly, we hold that Code § 2.1-342.2 does not require a Commonwealth's Attorney's office or other law enforcement

13

official to release actual records relating to a criminal incident, but only to provide a summary of the information available from the specified records subject to any mandatory or discretionary exemptions provided for in the statute. Thus, the trial court did not err in ruling that Kersey's provision of summary criminal incident information within a reasonable amount of time satisfied the requirements of the FOIA with respect to Connell's request.

CONCLUSION

For these reasons, we hold that the trial court did not err in sustaining Kersey's demurrer to Connell's petition for writ of mandamus. Accordingly, the judgment of the trial court will be affirmed.

<u>Affirmed</u>.

14