Present: All the Justices

BARBARA O. CARRAWAY

v. Record No. 020487    OPINION BY JUSTICE ELIZABETH B. LACY
                                    January 10, 2003
ELIZABETH S. HILL

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Norman Olitsky, Judge Designate

In this appeal, we consider whether the Government Data Collection and Dissemination Practices Act, Code §§ 2.2-3800 through -3809 (the Act), applies to constitutional officers.

From January 5 to April 2, 2001, Elizabeth S. Hill was employed by a temporary personnel service and assigned to the office of the City Treasurer of the City of Chesapeake. On April 2, 2001, Hill became a direct employee of the office. Hill's employment with the office ended on April 19, 2001. In May 2001, Hill became a candidate for the position of City Treasurer. Barbara O. Carraway, the incumbent, was running for re-election.

During the campaign, Carraway was interviewed by a newspaper reporter in response to a newspaper article in which Hill accused Carraway of failing to register a charity group Carraway operated at her office. In publishing the interview, the reporter quoted Carraway as stating that Hill was "released" from the City Treasurer's office after "less than three weeks" of employment. Hill's lawyer subsequently wrote

to Carraway seeking a retraction of her statements and an apology, asserting that Hill had voluntarily resigned her employment with the Treasurer's office. Hill, who had obtained her employment file from the City of Chesapeake Department of Human Resources, also accused Carraway of "padding" Hill's personnel file with negative comments concerning her employment by filing certain memoranda after her resignation. The newspaper obtained a copy of this letter and published an article detailing its contents.

Carraway's attorney responded to Hill's attorney by letter dated October 16, 2001, asserting that Carraway's statements were accurate and that, in accord with standard office procedure, memoranda concerning Hill's employment were transferred from the City Treasurer's employment files to the City of Chesapeake Human Resource Department's files after the termination of Hill's employment. Carraway provided the newspaper reporter with a copy of this letter.

On October 23, 2001, Hill filed a petition for declaratory judgment and injunctive relief asserting that Carraway violated the Act by giving the newspaper reporter information from Hill's employment file. Following a bench trial, the trial court issued a letter opinion stating that, "[b]ased upon all of the evidence presented to the Court, in particular the defendant's transmission and release of her

attorney's letter of October 16, 2001 to the news media," Carraway violated the Act. The trial court entered an order enjoining Carraway from committing any further violations of the Act "with respect to Elizabeth Hill" and awarded Hill attorneys' fees and costs pursuant to Code § 2.2-3809.[*] We granted Carraway an appeal.

The Government Data Collection and Dissemination Practices Act was enacted in response to concerns over potentially abusive information-gathering practices by the government, including enhanced availability of such personal information through technology. Hinderliter v. Humphries, 224 Va. 439, 443-44, 297 S.E.2d 684, 686 (1982). The Act does not make such personal information confidential but establishes certain practices which must be followed in the collection, retention, and dissemination of that information. Id. at 447, 297 S.E.2d at 688.

The specific provision of the Act which Carraway allegedly violated was subsection (A)(1) of Code § 2.2-3803. That subsection provides

> [a]ny agency maintaining an information system that includes personal information shall:

---

[*] The trial court's order referred to the predecessor statute which was enacted as the Privacy Protection Act of 1976, Code §§ 2.1-377 through -386, but which was repealed and reenacted under its current name without substantive change, effective October 1, 2001.

> 1. Collect, maintain, use, and disseminate only that personal information permitted or required by law to be so collected, maintained, used, or disseminated, or necessary to accomplish a proper purpose of the agency.

Carraway contends here, as she did below, that a constitutional officer does not come within the Act's definition of "agency" and, therefore, as Treasurer of the City of Chesapeake she was not subject to the provisions of the Act. We agree.

As recited above, the purpose of the Act is to provide standards which a government agency must follow in the operation of personal information systems. To accomplish this purpose, the provisions of the Act impose specific procedures on those agencies. See Code §§ 2.2-3803, -3805, -3806, -3808. The Act defines "agency," in relevant part, as "any agency, authority, board, department, division, commission, institution, bureau, or like governmental entity of the Commonwealth or of any unit of local government including counties, cities, towns and regional governments and departments . . . ." Code § 2.2-3801(6). "Agency" as used in the Act refers to an entity that receives its authority through legislative or executive action. See Connell v. Kersey, 262 Va. 154, 161, 547 S.E.2d 228, 231 (2001). In contrast, a constitutional officer is an independent public official whose authority is derived from the Constitution of

4

Virginia even though the duties of the office may be prescribed by statute.  See id. at 162, 547 S.E.2d at 232. While constitutional officers may perform certain functions in conjunction with units of county or municipal government, neither the officers nor their offices are agencies of such governmental units.

Had the General Assembly intended the Act to include constitutional officers, it could have expanded the definition of "agency" to reach such constitutional officers.  See e.g., Code § 42.1-77 (defining "public official" to include any person holding office created by Constitution of Virginia). Accordingly, we conclude that the Act does not apply to a city treasurer, a constitutional officer.

Hill argued on brief and at oral argument, however, that, even if the Act did not apply to the Office of the City Treasurer, it did apply to the City of Chesapeake Human Resources Department.  Analogizing Carraway's actions to that of a member of the board of supervisors in Hinderliter v. Humphries, Hill maintains that Carraway violated the Act when she provided information held by the Chesapeake Human Resources Department to her attorney and subsequently to the newspaper reporter.

In Hinderliter, a member of the board of supervisors received a copy of a police report containing personal

5

information on a police officer which the board member, in turn, allowed her daughter to use. Because the board member was entitled to the report in her official capacity, there was no violation when the board member was given the information. The board member, however, did violate the Act when she allowed her daughter access to and use of the report. Id. at 449-50, 297 S.E.2d at 689-90.

Hill's application of Hinderliter ignores the distinction between the status of a member of the board of supervisors and a constitutional officer. A county board of supervisors comes within the Act's definition of "agency" and, therefore, a member of such a board is subject to the provisions of the Act. In the instant case, as we have said, Carraway as a constitutional officer was not subject to the provisions of the Act.

Finally, Hill argues that Carraway is subject to the sanctions provided by the Act because Code § 2.2-3809 allows an action against "any person or agency that has engaged, is engaged, or is about to engage in any acts or practices" in violation of the Act. (emphasis added) We reject Hill's construction of this provision because such a construction would subject persons unconnected with a government agency to the Act's sanctions. Rather the phrase "any person" properly

6

construed refers to those persons through whom covered agencies conduct their business.

Because we conclude that the Act does not apply to constitutional officers, we will reverse the judgment of the trial court. Accordingly, we need not address Carraway's remaining assignments of error.

<u>Reversed and final judgment.</u>

7